539 So.2d 832 (1989)
Thomas A. WHITTINGTON, et ux., Plaintiffs-Appellees,
v.
Elliot J. BIENVENU, et ux., Defendants-Appellants.
No. 87-1199.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
*833 Donald A. Capretz, Mary E. Glod, Lafayette, for plaintiffs-appellees.
Timothy A. Jones, David S. Fitzgerald, Jr., Lafayette, for defendants-appellants.
Before YELVERTON, KNOLL and KING, JJ.
KNOLL, Judge.
Elliot J. Bienvenu and his wife, Ramona Barras Bienvenu, appeal the judgment of the trial court which found them liable to Thomas A. Whittington and his wife, Janell Dugas Whittington, on the basis of a counter letter which the Bienvenus signed obligating themselves to pay 10%, their proportionate ownership interest as recognized in the counter letter, of the land's mortgaged indebtedness. Even though the counter letter recognized several individuals who did not appear on the recorded deed of acquisition, the counter letter was not signed by all persons whose unrecorded ownership was recognized in it. Nonetheless, the trial court found the counter letter was enforceable between the litigants, both of whom had signed the document, and awarded the Whittingtons $65,918.10, an amount equivalent to 10% of the mortgage indebtedness paid by them.
The Bienvenus contend that the trial court erred: (1) in finding that the counter letter was valid between the parties who signed it; (2) in failing to find that the counter letter is unenforceable because it suffers from a vice of consent; and, (3) in finding that the counter letter contains a "certain price". We affirm.

*834 FACTS
On October 12, 1983, Otis Domas, Sidney Domas, Frank Domingue, and their wives purchased a certain tract of land in Lafayette Parish (hereafter the Ridge Road property) for development.
On December 2, 1983, Sidney and Otis Domas and the Domingues conveyed a 25% interest in the Ridge Road property by cash deed to Thomas A. Whittington and his wife. On that same date the Domases, the Domingues, and the Whittingtons (hereafter the record owners) mortgaged the Ridge Road property to American Bank & Trust Company, and signed a promissory note in the amount of $494,700. Contemporaneously with these transactions, the record owners signed a counter letter which stated in pertinent part:
"[We] do now appear herein for the purpose of declaring that in truth and in fact the [Ridge Road] property ... is also owned in part by appearers ROBERT N. DANIELS, DENNIS L. ERBELDING, SYLVIA SCHADLER, ELLIOT J. BIENVENU and RAMONA BARRAS [the non-record owners], so that in truth and in fact the property is owned in the following undivided proportions, to-wit:

OTIS H. DOMAS, JR. and
NOLA GAUTREAUX DOMAS An undivided 15% percent.
SIDNEY J. DOMAS and
WANDA BERTRAND DOMAS An undivided 15% percent.
FRANK DOMINGUE and
BERNADINE CARROLL DOMINGUE An undivided 15% percent.
THOMAS A. WHITTINGTON and
JANELL DUGAS WHITTINGTON An undivided 15% percent.
DENNIS L. ERBELDING and
SYLVIA SCHADLER ERBELDING An undivided 15% percent.
ROBERT N. DANIELS An undivided 15% percent.
ELLIOT J. BIENVENU and
RAMONA BARRAS BIENVENU An undivided 10% percent.

Appearers [the record and non-record owners] do hereby further declare that each of appearers herein shall be liable, and each of appearers does hereby agree to be bound to all of the other appearers herein, for his pro rata share of the mortgage indebtedness ... to American Bank & Trust Co. to secure payment of a promissory note in the sum of $490,000.00 and each of appearers herein does hereby agree to pay his or her pro rata share of the indebtedness secured by the aforementioned collateral mortage and collateral mortgage note. Each of appearers does hereby agree to hold the other appearers herein harmless from any liability for the payment of anything more than their respective pro rata share of liability for the aforementioned promissory note."
Everyone, with the exception of Robert N. Daniels, Dennis L. Erbelding, and Sylvia Schadler Erbeldingall non-record owners, signed the counter letter. On or about December 2, 1983, John A. Mouton III, the loan closing attorney for the real estate mortgage to American Bank & Trust, drafted checks to all record and non-record owners, including those persons who failed to sign the counter letter, disbursing excess loan proceeds in proportion to each party's pro rata ownership as designated in the counter letter. The Bienvenus, the Erbeldings, and Daniels, together with the other appearers, received and deposited checks, containing the notation "excess loan proceeds" on their face, in amounts proportioned to each's ownership interest.
The original promissory note to American Bank & Trust Co. was renewed with accumulated interest on July 18, 1984, for $540,840.95, and again on March 26, 1985, in the amount of $596,543.86; on the latter occasion, although Robert Daniels and Dennis Erbelding, who had not originally signed the promissory note, signed the renewal note, Elliot Bienvenu, who also had not signed the original promissory note, refused to sign.
American Bank & Trust Co. initiated foreclosure proceedings. On March 27, 1986, American Bank & Trust Co. required *835 the Whittingtons to pay $659,180.97, the principal balance of the note with accumulated interest, and to post $150,000 cash to guarantee a bidder for that amount at the sheriff's sale of the Ridge Road property. American Bank & Trust Co. eventually was the only bidder on the property, and purchased it at the sheriff's sale for $133,000. Accordingly, the Whittingtons' $150,000 cash bond was placed in escrow with FDIC, the successor to American Bank & Trust Co., which in the meantime was declared insolvent.[1]
Dennis Erbelding, the Domingues, and Robert Daniels are bankrupt.

COUNTER LETTER
The Bienvenus first contend that the counter letter is not enforceable. They stress that three key parties to the document, Robert N. Daniels, Dennis Erbelding and Sylvia Erbelding, never signed, and argue that the counter letter was only partially executed, and that the lack of these signatories further vitiated the consent of the parties who did sign.
In Ward v. Pennington, 434 So.2d 1131 (La.App. 1st Cir.1983), writs denied, 438 So.2d 572, 576 (La.1983), our brethren of the First Circuit commented:
"Although a counter-letter is not defined in the Civil Code, a relatively clear definition has developed in the jurisprudence. In Louis v. Garrison, 64 So.2d 254 (La. App. Orleans 1953) the court stated at page 257:
The only mention of counter-letters in the LSA-Civil Code is to be found in Article 2239, which recites in part: `Counter letters can have no effect against creditors or bona fide purchasers * * *.' We have searched in vain for any codal or statutory definition of the term. In Karcher v. Karcher, 138 La. 288, 70 So. 228, 229, the Supreme Court, quoting Bouvier, defined a counter-letter as:
"`An agreement to reconvey where property has been passed by absolute deed with the intention that it shall serve as security only. A defeasance by a separate instrument.' Bouvier." `Both 1 Bouvier's Law Dict., Rawle's Third Edition, page 814 and Black define the word `defeasance' as an instrument which defeats the force or operation of some other deed or of an estate.'"
Counter letters require no special form, except that they must be in writing. Decatur-St. Louis, Etc. v. Abercrombie, 411 So.2d 677 (La.App. 4th Cir.1982). Counter letters are binding between the parties. Id. at page 680.
In its most basic sense, a counter letter is an agreement, a contract, between a record owner(s) and non-record owner(s) whereby the record owner recognizes the true ownership interest of the non-record owner. Karcher, supra. The contract is the law between the parties. Pogo Producing Co. v. Sea Robin Pipeline Co., 493 So.2d 909 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 310 (La.1986).
In the present case, all the litigants were signatories to the counter letter at issue. The counter letter was, inter alia, a recognition by the record owners, all of whom signed, that the Bienvenus had a 10% ownership interest in the Ridge Road property. Furthermore, the counter letter served as an agreement by the Bienvenus that they were obligated, for a maximum of 10%, to any party to the contract who paid greater than their pro rata share of liability to American Bank & Trust Co. Under these facts, it is immaterial that the Erbeldings and Daniels did not sign, since these non-signing parties are not attempting to enforce the provisions of the counter letter, and the Whittingtons are not seeking more than 10% from the Bienvenus. Because all of the record owners signed the counter letter with the Bienvenus, the document's *836 obligations are enforeceable by the Whittingtons against the Bienvenus.
The Bienvenus next argue that if they had known that the Erbeldings and Daniels were not going to sign the counter letter, they would not have consented to the terms of that agreement. They state in brief, "If one person did not consent or accept the counter-letter, then the consent or acceptance by the others is revoked." We disagree.
Prior to the 1984 revisions to the obligations articles of the Louisiana Civil Code, the articles applicable to the present case, consent to contract was defined in LSA-C. C. Art. 1819 as follows:
"Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by
Error;
Fraud;
Violence;
Threats."
In the case sub judice, the obligations created by the counter letter regarding the liability for the indebtedness, the enforcement of which forms the basis of the present litigation, were clearly divisible, i.e., each person's liability was based on the percentage of ownership. Furthermore, the counter letter does not employ any restrictive language of acceptance as argued by the Bienvenus. After carefully reviewing the record, we conclude that the "all or none" argument espoused by the Bienvenus is without merit.
In a related, but tangential issue, the Bienvenus point out that it must be presumed that the testimony of Dennis Erbelding was favorable to them, since the Whittingtons did not call him as a witness, even though he was subpoenaed by them. In this regard, we make only one observation. This witness was equally available to both litigants to testify; accordingly, we will make no presumption as to the effect of this witness's failure to testify.
Finally, the Bienvenus argue, without citation of authority, that the counter letter is unenforceable because it lacks the essential elements of a sale as required by Louisiana's Civil Code. After carefully reviewing the record and the jurisprudence, we dismiss the Bienvenus' argument for two reasons: First, there is no form required by the Louisiana Civil Code for a counter letter, other than that it be in writing. Decatur-St. Louis, Etc., supra. Second, a counter letter does not secretly convey property from the record owner to the non-record owner; rather, it is an expression of the true intent of the parties at the time the act of public record was executed. See Safford v. Ellish, 276 So.2d 884 (La. App. 1st Cir.1973).
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Bienvenus.
AFFIRMED.
KING, J., concurs in the result only believing that the litigants are bound by the terms of a contract entered into between them as parties to the contract.
NOTES
[1] The Whittingtons borrowed $300,000 from another bank, and withdrew $150,000 from their savings. After their payment of the additional $150,000 cash bond, the remaining balance on the American Bank note was undertaken by Otis and Sidney Domas, and Dennis Erbelding who signed a promissory note for $60,000.