United States Court of Appeals,

Fifth Circuit.

No. 96-60265.

Claude J. AUTIN, Petitioner-Appellant,

v.

COMMISSIONER of INTERNAL REVENUE, Respondent-Appellee.

April 4, 1997.

Appeal of a Decision of the United States Tax Court.

Before WISDOM, DAVIS and DUHÉ, Circuit Judges.

WISDOM, Circuit Judge:

Claude J. Autin appeals the tax court's finding of a 1988 gift despite his asserted 1974 transfer of the subject property to his son by counterletter. For the reasons that follow, we REVERSE.

BACKGROUND

*A. Proceedings and Disposition Below*

On December 20, 1991, the Internal Revenue Service issued a notice of deficiency to the petitioner, Claude J. Autin, finding a deficiency in Mr. Autin's 1988 gift tax and a delinquency addition to the tax under Internal Revenue Code § 6651(a)(1).[1]

On March 4, 1992, the petitioner filed for redetermination in the United States Tax Court, and on May 21, 1993, a trial was conducted before that court.[2] The court found that Mr. Autin made a gift to his son in 1988. The court also found, however, that Mr. Autin was not liable for the delinquency addition.

After denial of a motion for interlocutory appeal, the parties settled on valuation prior to trial on that issue. On January 17, 1996, the tax court entered a decision in accordance with the parties' agreement.

---

[1]The IRS alleged a tax deficiency of $1,649,736, and a delinquency addition of $412,434.

[2]The petitioner filed, and the court granted, a motion to sever the issue of whether a gift occurred from the issue of valuation.

*B. Facts*

Claude Autin is a successful marine industry executive. Between 1951 and 1974, he acquired world-wide contacts, extensive experience, and a fine reputation in his field. Bobby Autin ("Bobby") is Mr. Autin's only child; he was 24 years old in 1974. The petitioner wanted to help his son "be something in this life", and thus desired to establish Bobby in business. Although Bobby possessed very little experience in the marine industry, Mr. Autin formed Louisiana International Marine, Inc. ("LIM") in August 1974 in an effort to launch his son's career. The primary business of LIM is the brokerage of vessels to move offshore drilling rigs.

At the time of LIM's incorporation, stock certificate number one was issued in the name of the Claude Autin for 51 shares. Certificate number two was issued to Bobby Autin for 49 shares. At the same time, the petitioner executed a "COUNTER LETTER and AGREEMENT TO CONVEY". The counterletter stated "[t]hat in truth and fact [the petitioner] has no ownership interest in [LIM]". The counterletter further explained that the shares were acquired by the petitioner "for the account of his son", and stated that the reason for the arrangement was to promote the business of the company. According to Mr. Autin, because he had extensive experience in the marine industry and a fine reputation, the company would fare better if the public believed that he was the principal owner of the company. The counterletter also contained a provision wherein the petitioner promised that he would "execute in favor of said Bobby Autin, or his nominee, at such time as [the petitioner] is called upon to do so, any and all instruments and documents necessary to transfer to [Bobby] all title and interest that [the petitioner] has or may have in and to [LIM] or Certificate No. 1".

Claude Autin was the president of LIM and was listed as a shareholder in LIM's minutes. Although he was also listed as a shareholder on LIM's tax returns, Mr. Autin did not claim to own the shares on personal financial statements.

In June 1988, the record ownership of the shares was changed to Bobby's name. This change

of record ownership is the transaction that the tax court found to be a taxable gift.[3]

## DISCUSSION

The petitioner asserts that, under state law, he never held any interest in LIM because the counterletter stated that the shares were purchased for Bobby's account. Thus, the petitioner argues, the counterletter validly vested full ownership of all shares in Bobby. No gift can be made, he asserts, of a thing never possessed by the alleged grantor. In the alternative, the petitioner maintains that any interest he may have held in LIM was transferred to Bobby upon execution of the counterletter in 1974. The Commissioner of Internal Revenue (the "Commissioner") maintains that Claude Autin was the legal owner of 51 percent of LIM because he was the record owner of the shares, exercised managerial control over the company, and under state law his creditors could have reached the shares.

The parties do not dispute the facts of this case as found by the trial court. As such, the application of those facts to legal concepts to determine if and when a gift occurred presents us with a question of law. We review tax court conclusions of law *de novo.*[4]

### A. Interests in LIM under Louisiana law

No court considering federal taxation problems has challenged the premise that state law determines the nature of a property right; federal law's task is to determine the appropriate tax treatment when such property rights are transferred.[5] Determination of the property rights at issue here requires a brief discussion of the act executed by the parties.

---

[3]In May 1992, as part of a 1986 divorce and property settlement between the petitioner and his wife, the Twenty-Fourth Judicial District Court for the Parish of Jefferson found that the counterletter was valid and held that the petitioner had no ownership interest in LIM. This determination does not affect our review in this case. Where tax liability turns upon the character of a property interest held and transferred under state law, federal courts are not bound by a determination of such interest made by a state trial court. *C.I.R. v. Estate of Bosch,* 387 U.S. 456, 457, 87 S.Ct. 1776, 1778-1779, 18 L.Ed.2d 886 (1967).

[4]*Valero Energy Corp. v. C.I.R.,* 78 F.3d 909, 912 (5th Cir.1996).

[5]*Burnet v. Harmel,* 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932); *Morgan v. C.I.R.,* 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940); *United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). This court has similarly held fast to this principle. *See C.M. Thibodaux Co., Ltd. v. United States,* 915 F.2d 992 (5th Cir.1990); *Estate of Johnson v. United States,* 836 F.2d 940 (5th Cir.1988); *Prewitt v. United States,* 792 F.2d 1353 (5th Cir.1986).

The transaction in this case was undertaken to further a simulation—an act that, by agreement between the parties to it, does not reflect their true intent.  In the civil law, a simulation is a collusive effort consisting of a visible act that is artificial, and a genuine expression of the parties' intent that is kept secret.  This deception is not always fraudulent, however, as is demonstrated by the instant case.  Here, the Autins wished the public to believe that Claude Autin, a respected businessman, owned LIM. Thus the registration of the shares in Claude Autin's name—the artificial aspect of the simulation.  The true intent of the parties, however, was for Bobby Autin to own all shares in the company.  This intent was expressed, and subsequently kept secret, in a counterletter.[6]

Courts have defined the nature of the right created by a counterletter.  Loui siana law distinguishes between rights that are "real" and rights that are merely "personal".  Personal rights consist of relations between persons.  These rights exist between an obligee—one who holds the right to demand performance, and an obligor—he who is then required to do the thing demanded.  Personal rights are not susceptible to possession and thus may not be pursued into the hands of a third party; they are enforceable only against the obligor.[7]

Real rights, according to French doctrine, are comprised of the relation between a person and a thing.[8]  As the Louisiana Supreme Court stated in 1958, "it is clear that the term "real right' under the civil law is synonymous with proprietary interest, both of which refer to a species of ownership.  Ownership defines the relation of man to things and may, therefore, be declared against the world."[9]

The execution of a counterletter conveys a real right.  This principle was enunciated by the Louisiana Supreme Court in *Peterson v. Moresi,*[10] and by the Louisiana 4th Circuit Court of Appeals

---

[6]For a full discussion of simulation and counterletters, *see* Thomas B. Lemann, *Some Aspects of Simulation in France and Louisiana,* 29 TUL. L. REV. 22 (1954).

[7]*Reagan v. Murphy,* 235 La. 529, 105 So.2d 210, 214 (1958).  *See also* A. Yiannopolous, Property § 134, in 2 Louisiana Civil Law Treatise (2d ed.1980).

[8]Aubry and Rau, Property § 172 at 62, in Civil Law Translations (7th Ed.1961).

[9]*Reagan,* 105 So.2d at 214.

[10]191 La. 932, 186 So. 737 (1939).

in *Dupuy v. Riley.*[11]  These cases hold that a counterletter is an acknowledgment of true ownership and indicates that the record owner holds title to the property as agent for the person named in the counterletter.[12]

We first address the petitioner's assertion that the counterletter vested ownership of the LIM shares in Bobby as of the moment of corporate formation;  that is, that Claude Autin never acquired an ownership interest in LIM, and thus no gift occurred at any time.  This argument is founded upon the language in the counterletter stating that Claude Autin purchased the LIM shares "for the account of his son", and the rule that parties to a counterletter are bound thereby.  Louisiana courts have embraced this rule,[13] and, as the petitioner points out, in *Dupuy* and *Peterson* the courts held that the counterletters in those cases indicated that the property in question was purchased for the account of another as agent;  the record owner held no interest.  Nonetheless, we find that the petitioner held an interest in the shares of LIM upon corporate formation.

At the time LIM was incorporated, the Louisiana Constitution of 1921 was in effect.  Article 13, § 2 of that constitution states that consideration is required for the issuance of stock.[14]  In both *Dupuy* and *Peterson,* the counterletter stated (and the courts highlighted) that the individual for whose account the property was purchased *had paid the purchaser adequate consideration.*[15]  In the present case, the counterletter makes no mention of consideration paid, nor does the petitioner allege that Bobby paid any consideration for the LIM shares.  To the contrary, counsel for the petitioner

---

[11]557 So.2d 703 (La.App. 4th Cir.1990) *writ den.*  563 So.2d 878 (1990).

[12]One case, however, weighs against the conclusion that a counterletter conveys a real right. In *Favaloro v. Favaloro,* 561 So.2d 783 (La.App. 4th Cir.), *writ denied,* 567 So.2d 1125 (1990), the court held that a person who receives a counterletter purporting to convey an ownership interest in immovable property receives only a personal right which may be asserted against the transferor, not an actual ownership right in the property.  The Fourth Circuit cited no authority, however, for this determination, one that is in apparent conflict with Louisiana jurisprudence. Accordingly, we consider *Favaloro* to be an erroneous departure from established jurisprudence and follow the rule that a counterletter conveys a real right.

[13]*Dawsey v. Gruber,* 647 So.2d 1084 (La.1994);  *Whittington v. Bienvenu,* 539 So.2d 832 (La.App. 3d Cir.1989);  *Safford v. Ellish,* 276 So.2d 884 (La.App. 1st Cir.1973).

[14]LA. CONST. OF 1921, Art. XIII, § 2.

[15]*Dupuy,* 557 So.2d at 709;  *Peterson,* 186 So. at 737-738.

conceded in oral argument that Claude Autin paid $5,100 for the 51 shares in question. Hence, we find that at the moment of corporate formation, the LIM shares belonged to the individual who paid consideration for them as required by the Louisiana Constitution of 1921. That individual was Claude Autin. Accordingly, we reject the assertion that no gift occurred at any time and turn to Autin's alternative argument, that the counterletter effected a gift upon execution.

*B. Completion of a Gift*

Having determined that the LIM shares were owned by Claude Autin at corporate formation, the question remains whether, for gift tax purposes, the shares were transferred to Bobby in 1974—when the counterletter was executed, or in 1988—when Bobby became the owner of record.

The Commissioner asserts that retention by the donor of "dominion and control" over the allegedly transferred property renders the gift incomplete until such control is relinquished. The Commissioner points to Claude Autin's continued factual control over LIM. The petitioner continued to manage the company, remained as the record owner of the 51 shares in consideration, and filed tax returns listing the petitioner as a 51 percent owner of LIM.

On the other hand, the petitioner asserts that relinquishment of *legal* dominion and control under local law completes a gift regardless of any retention of *factual* control over the property. Autin asserts that the counterletter constituted a legally binding agreement with his son, that it conveyed a real right, and that as such, the gift was complete upon execution of the counterletter in 1974. We agree.

A legally enforceable promise to give is subject to gift tax at the time the promise is made, not when the property is actually transferred.[16] This principle is premised upon the notion that once the donor has relinquished legal control of the property, any factual control he might exert is in derogation of the donee's rights as legally vested under state law. A compelling example of this is

---

[16]*Harris v. C.I.R.,* 178 F.2d 861 (2d Cir.1949), *rev'd on other grounds,* 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950); *Estate of Copley v. C.I.R.,* 15 T.C. 17, 1950 WL 248 (1950), *affirmed* 194 F.2d 364 (7th Cir.1952); *Rosenthal v. C.I.R.,* 205 F.2d 505 (2d Cir.1953). The Internal Revenue Service has continually reaffirmed this proposition. *See* Rev. Rul. 69-347, 1969-1 C.B. 227; Rev. Rul. 80-186, 1980-2 C.B. 280; Rev. Rul. 81-110, 1981-1 C.B. 479; Rev. Rul. 84-25, 1984-1 C.B. 191.

provided by the Commissioner's own Revenue Ruling. In Situation One of Revenue Ruling 78-215, A purchased United States Treasury Notes and registered them in the names of "A or B or the survivor". Under local law, this language created a joint tenancy and at the time of creation, the rights of the joint tenant vested immediately. The notes were in the absolute possession and control of A at all times. A received and cashed all interest payment checks. "A" redeemed the notes at maturity and retained the proceeds. B never knew of the notes themselves, A's receipt of the income from the notes, or the redemption of the notes. Nonetheless, the Revenue Ruling concludes that a gift from A to B was complete upon registering the notes because the factual control was not sufficient to adversely affect B's interest that was vested under local law. This situation is indistinguishable from the instant case. Bobby's right to the shares was vested under local law through the counterletter. The petitioner, consequently, had no power to adversely affect the rights of his son after the counterletter was executed. Hence, the gift was complete upon execution.

The Commissioner argues that, although local law may clothe Bobby with equitable title, the petitioner's failure to relinquish factual dominion and control makes him the legal owner until the change of record ownership in 1988. The Commissioner cites several cases in support of this proposition.[17] Each of these cases is distinguishable, however, in that the grantor in each case reserved not only factual control, but some power to *legally divest the grantee of his beneficial interest*.[18] This difference is critical, as it illustrates the theory behind the promise to give cases—that control by the grantor is in derogation of the grantee's rights. In *Smith, Sanford, Burnet,* and *Robinson,* the grantor was completely within his legal rights to affect the grantees beneficial interest in the property because such rights were expressly reserved. The instant case is completely different. Under local law, the counterletter vested a real right in Bobby. That right could not be legally

---

[17]*Smith v. Shaughnessy,* 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690 (1943); *Estate of Sanford v. C.I.R.,* 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20 (1939); *Burnet v. Guggenheim,* 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748 (1933); *Robinson v. C.I.R.,* 675 F.2d 774 (5th Cir.1982), *cert. den.* 459 U.S. 970, 103 S.Ct. 300, 74 L.Ed.2d 282 (1982).

[18]*Smith* involved retention of a reversionary interest; *Sanford,* a right to designate new beneficiaries to a trust; *Burnet,* a right to revoke the gift; *Robinson,* a right to appoint the corpus of a trust (although the gift was held complete when the power of appointment was released).

eliminated, lessened, or transferred by Claude Autin. As such, the execution of the counterletter in 1974 comprised a complete gift.

## C. Creditors Rights

Article 2028 of the Louisiana Civil Code states that "counterletters can have no effect against third persons in good faith".[19] Based on this article, the Commissioner makes an additional argument that a transfer of property cannot be a complete gift if, under state law, the grantor's creditors can still reach the gift. If we understand the argument, it is that the ability of Claude Autin's creditors to *treat* the shares as his personal assets precludes our finding that the shares belonged to Bobby; that is, that a gift occurred in 1974.

Article 2028 clearly dictates that if the petitioner sold the shares to a purchaser in good faith or pledged them to a creditor, the counterletter would have no effect against that person. Bobby, as a result, could not pursue the shares into the hands of that third party. Hence, to that extent, it is true that the petitioner could divest Bobby of his beneficial interest in the shares themselves. Nonetheless, because the counterletter is binding under local law, the petitioner would be subject to suit and, as such, *could not legally divest Bobby of the value of the shares.* Indeed, the Commissioner conceded this point at oral argument. We find the hypothetical ability of a non-existent third party to pursue the shares to be irrelevant in this case and, thus, find Article 2028 to be inapplicable.

## CONCLUSION

We find that upon corporate formation, the 51 shares of Louisiana International Marine recorded in the name of Claude Autin were owned by Claude Autin. Those shares were subsequently transferred to Bobby Autin by execution of a valid counterletter. This 1974 transaction constituted a complete gift for federal gift tax purposes. Accordingly we REVERSE the tax court's finding of a 1988 gift. We REMAND the case to the tax court for redetermination of taxes due consistent with this opinion and, if appropriate, taxing of costs under 26 U.S.C. § 7430.

---

[19]La. Civ. C. Art.2028. Although Article 2028 was enacted in 1985, it did not change the law. Rather, it was intended to embody the law previously contained in Article 2239, which stated in relevant part that "[c]ounterletters can have no effect against creditors or bona fide purchasers; they are valid as to all others ...".