# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 23-7

**MARY ALICE DUGAS BORDELON, INDIVIDUALLY AND AS TRUSTEE OF THE ERICK JAMES BORDELON TRUST**

**VERSUS**

**WILLIAM A. STEGALL, SR., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2019-3089
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GARY J. ORTEGO**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Jonathan W. Perry, and Gary J. Ortego, Judges.

**AFFIRMED.**

**Allan L. Durand**
**Attorney at Law**
**235 Rue France**
**Lafayette, LA 70508**
**(337) 237-8501**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Mary Alice Dugas Bordelon, individually and as trustee of the**
    **Erick James Bordelon Trust**

**Charles A. Schutte, Jr.**
**Schutte, Richardson, Eversberg, Cronin, Judice & Avocato**
**501 Louisiana Avenue**
**Baton Rouge, LA 70802**
**(225) 387-8330**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **William A. Stegall, Sr.**
    **Bord's Concrete & Services, Inc.**
    **Gwendolyn Michel Stegall**
    **Mo-Dad 1, Inc.**

**ORTEGO, Judge.**

In this matter, the vendor in the sale of a business filed suit against the vendees seeking recognition by the court of an alleged 29% reserved ownership interest in the immovable property sold with the business. The trial court determined that the vendor conveyed full ownership of the immovable property to the vendees via cash sale, and rejected the vendor's argument that a second document signed at the time of sale sufficiently reserved the 29% interest in favor of the vendor. The vendor appeals.

## FACTS AND PROCEDURAL HISTORY

This litigation arises out of the sale of a business, Bord's Concrete & Services, Inc. (hereinafter "Bord's Concrete"). On January 16, 2004,[1] appellant, Mary Alice Dugas Bordelon, individually and as trustee of the Erik James Bordelon Trust (hereinafter "Bordelon"), and appellees, William Stegall and Gwendolyn Michel Stegall (hereinafter "the Stegalls")[2], executed two (2) separate transactions to consummate the sale. The first document executed was an authentic act of cash sale (hereinafter "cash sale"). The cash sale conveyed the immovable property, without any reservation of Bordelon's ownership rights, to the Stegalls. The cash sale included specific descriptions of the property and stated in pertinent part, as follows:

---

[1] Prior to the January 16, 2004 closing, Bordelon and Stegall signed an agreement to Purchase and Sell Business on July 25, 2003. Paragraph I(C) states that the five parcels of immovable property where Bord's Concrete was located would be sold to Stegall, except for the property known as the "Daycare," which is described as a parcel of approximately ten acres located behind the Daycare. Stegall agreed in the Purchase Agreement to form a new entity to develop the Daycare into a trailer park containing approximately 60-100 lots for rental to third parties. The parties agreed that a mortgage could be placed on the property for financing of the trailer park. Appellants in this case do not rely on the Purchase Agreement in their arguments. However, it is discussed briefly in the assignments of error.

[2] In addition to the Stegalls, Appellees include Mo-Dad 1, Inc. and Bord's Concrete, which were named Defendants in the original suit.

[F]or the consideration herein mentioned [Bordelon does] by these presents, sell, transfer and deliver with full guarantee of title and free from all encumbrances and with subrogation to all of their rights and actions of warranty against previous owners.

The second document was entitled "Sale of Business and Assets" (hereinafter referred to as "Business Sale"). The Business Sale addressed both movable and immovable property conveyed from Bordelon to the Stegalls. Most prevalent to this appeal, it included language that purported to reserve 29% of "all of the immovable property described herein" to Bordelon. Specifically, Paragraph II (3) and (4) of the Business Sale states (emphasis added):

3) The Stock Purchasers agree to develop the Ten Acre tract referred to herein at their expense into a trailer park between approximately 60 and 100 lots for rental to third parties. **Stock Purchasers agree that sellers own 29% of all of the immovable property described herein, together with any improvements thereon, now or in the future and that Sellers will receive 29% of the proceeds of any sale of that property.**

4) The Purchasers agree that, after payment of the entire Purchase Price, **Sellers will own 29% of the business and assets described in I(A) above,[3] together with any replacements thereof, and that therefore upon the sale of same Sellers will receive 29% of the proceeds of same.**

Additionally, the Stegalls signed a promissory note payable to Bordelon in connection with the sale, in the amount of $1,800,000.00, which also included an agreement wherein the Stegalls assumed the debts and liabilities of Bord's Concrete. The trial court considered certain claims related to repayment of the promissory note; however, these claims are not at issue in the appeal before this court.

---

[3] Paragraph I(A) described the movable property associated with the business. The immovable property is referenced in a separate paragraph.

On August 16, 2018, Bordelon recorded an Act entitled "Notice of Ownership" referring to the Business Sale, and specifically to Bordelon's alleged retention of a 29% interest in all of the immovable property. Additionally, Bordelon filed a petition seeking to collect an additional amount owed on the promissory note, signed at the January 16, 2004 closing.

The Stegalls filed a reconventional demand requesting that the court declare Bordelon had no ownership interest in the property. Specifically, the Stegalls also asserted that: (a) the inscription of the notice in the public records should be cancelled; (b) Bordelon has no ownership interest in the property under the sale of business and assets since it fails to meet any legal requirements to create an interest in the property; (c) in the alternative, the Business Sale is ambiguous since it fails to specifically describe the ten acre parcel, more or less, to be used for developing a trailer park; (d) any rights created in Bordelon's favor under the Business Sale was limited to the right to participate in the development of the trailer park on the ten acres and to share ownership in a legal entity to be established by the Stegalls to develop the trailer park; and (e) the rights created in the Business Sale were personal rights granted in a contract which prescribed in ten years as a matter of law.

A hearing on these matters came before the trial court on January 10, 2022. The trial court found that the Business Sale did in fact properly reserve a 29% ownership of Bord's Concrete, as a business entity only, in Bordelon's favor. However, in as much as the Business Sale lacked any specific property description, the trial court determined that Bordelon's ownership interest in the immovable property was not preserved. Accordingly, the notice of ownership had no effect on the previously recorded cash sale. The trial court signed a judgment to this effect on June 28, 2022.

3

In response to the trial court's original judgment, the Stegalls filed a motion to modify judgment to specifically describe the property at issue, and Bordelon filed a rule for partial new trial on the issue of ownership of the immovable property. After a hearing held on August 29, 2022, the trial court granted the Stegalls' motion to modify the judgment and denied Bordelon's motion for partial new trial. The trial court signed the modified judgment on September 20, 2022.

Bordelon only appealed the portions of the judgments that addressed her ownership of the immovable property and assigned two errors.

## ASSIGNMENTS OF ERROR

1.  The trial court erred in ruling that the Business Sale did not result in Bordelon retaining a 29% interest in the immovable property involved in the transaction.

2.  The trial court erred in not granting Bordelon's motion for partial new trial on that issue.

## STANDARD OF REVIEW

The applicable standard of review of a trial court's determination of a contract dispute is manifest error. This court in the case of *Suva Corp. v. Smith*, 17-328 p. 4 (La.App. 3 Cir. 11/22/17), 234 So.3d 965, 969 (emphasis added) (citation omitted), stated:

> [W]e have previously held that the determination of whether a mutual error existed such that contract reformation is warranted is **a question of fact**, and we will not disturb the trial court's findings unless it was clearly wrong. *See Teche Realty & Inv. v. Morrow*, 95-1473 (La.App. 3 Cir. 4/17/96), 673 So.2d 1145; *WMC Mortgage Corp. v. Weatherly*, 07-75 (La. App. 3 Cir. 6/13/07), 963 So.2d 413, *writ denied*, 07-1475 (La. 10/5/07), 964 So.2d 945. Accordingly, **if reasonable people could reach the same conclusion after a review of the record, the trial court's finding cannot be clearly wrong** even if, had we been sitting as the trier of fact, we may have reached a different conclusion.

Therefore, this court will review the trial court's judgment using the manifest error standard.

4

## LAW AND DISCUSSION

*I.    Retained Ownership*

Bordelon's first assignment of error, as noted above, reads as follows:

> The trial court erred in ruling that the Business Sale did not result in Bordelon retaining a 29% interest in the immovable property involved in the transaction.

Bordelon argues that the language in the Business Sale was "clear and unambiguous" with regard to the retention of the 29% interest, and the Stegalls failed to introduce any evidence or testimony countering the plain language of the document.

Contrary to the trial court's finding that the Business Sale "lacked any specific property description," Bordelon avers that the document references specific language from the cash sale in Paragraph I(B), particularly the mention of the "ten acre, more or less, tract of land located nearby"[4]. Paragraph I(B) states:

> By Act of Cash Sale executed simultaneously herewith, Sellers have transferred to the Stock Purchasers the real estate upon which Bord's Concrete and Services is located, together with an unimproved ten acre, more or less, tract of land located nearby.

Furthermore, Bordelon emphasizes that the ten acre tract "referred to herein" is referenced in Paragraph II(3) above. Bordelon argues that these paragraphs clearly incorporate the legal descriptions contained in the cash sale by reference. Bordelon also contends that the two agreements, executed simultaneously and dealing with the same subject matter, should be interpreted in pari materia. To this end, Bordelon argues that identical language, on the same page in the same document, should not be given opposite interpretations.

---

[4] The phrase "ten acre, more or less, tract of land nearby" does not appear in the cash sale verbatim.

In support, Bordelon cites *Suva Corp. v. Smith*, 17-328 (La. App. 3 Cir. 11/22/17), 234 So.3d 965, wherein an act of sale was simultaneously executed along with a purchase agreement by which one brother sold "all of the property he owned in Sabine Parish" to the other brother. In *Suva*, the parties executed a "cash deed" purporting to transfer the property between the parties, but it inadvertently omitted the description of a piece of property located in Sabine Parish. Bordelon avers that this case presents less extreme circumstances than *Suva*, as here, the Business Sale used a general description rather than the specific description contained in the cash sale. However, as noted above, Bordelon avers that the Business Sale incorporated the description by reference.

Finally, Bordelon avers that the Business Sale evidences that the cash sale was a partial simulation, and that this document functions as a valid counterletter properly retaining her ownership interest. Bordelon notes that counterletters do not require property descriptions in order to be valid.

In assessing Bordelon's arguments, we begin by recognizing that the cash sale transferring full ownership of the immovable property at issue from Bordelon to the Stegalls is an authentic act. An authentic act constitutes full proof of the agreement it contains, as against the parties. La.Civ. Code art. 1835. Generally, parol evidence is not admissible to negate or vary the terms of an authentic act or an act under private signature. La.Civ. Code art. 1848.

Parol evidence may be admitted for certain limited purposes in assessing the effects of an authentic act. Specifically, La.Civ. Code art. 1848 allows the admission of evidence that "[proves] that the written act was modified by a subsequent and valid oral agreement." Furthermore, La.Civ. Code art. 1849 allows the admission of testimonial or other evidence "to prove the existence or presumption of a simulation

6

or to rebut such a presumption." However, La.Civ. Code art. 1849 requires a "counterletter . . . to prove that an act purporting to transfer immovable property "is an absolute simulation." Bordelon argues that the Business Sale is a counterletter proving that the cash sale was a partial simulation.

Louisiana Civil Code Article 2025 defines a simulation as follows:

> A contract is a simulation when, by mutual agreement, it does not express the true intent of the parties.
> If the true intent of the parties is expressed in a separate writing, that writing is a counterletter.

A counterletter is a binding agreement between "record owner(s) and non-record owner(s) whereby the record owner recognizes the true ownership interest [s] of the non-record owner," and "[c]ounter letters require no special form, except that they must be in writing." *Whittington v. Bienvenu*, 539 So.2d 832, 835 (La.App. 3 Cir. 1989). Furthermore, a counterletter need not satisfy the essential elements of a sale in order to be enforceable. *Id.*

Bordelon argues that the Business Sale constitutes a counterletter such that, between the parties, it preserves a 29% ownership interest of the immovable property in favor of Bordelon. Even accepting as true that the Business Sale is a valid counterletter, we note that the Business Sale was drafted by Bordelon's attorney, as the Stegalls were unrepresented in the sale. As Bordelon drafted this document, La.Civ.Code art. 2474 dictates that any ambiguities in the expression of the rights and obligations arising from the transaction and the sale of the property must be interpreted against Bordelon.

Bordelon is correct that the Business Sale does reference the act of cash sale. Crucially, however, nowhere does it designate what portion of the property the 29% ownership interest represents. Evidence admitted at trial, including testimony and a

7

purchase agreement signed six months prior to the closing of the sale, indicated that the 29% ownership interest was confined to the ten acre tract of land to be developed into a trailer park at a later date. However, as noted above, Paragraph II(3) refers to Bordelon's 29% ownership interest in *all* of the immovable property.

Though a counterletter need not contain a property description to be enforceable, a property description would be necessary here, as Bordelon only claims to own a portion of the property. Therefore, a reference to the cash sale, which includes *all* of the immovable property, is not sufficient. Thus, Bordelon failed in her burden of proof to demonstrate what portion of the property in which she has a 29% ownership interest.

Additionally, the Business Sale presented other ambiguities to failing to designate what portion of the property Bordelon allegedly owns. For example, it is unclear from the Business Sale whether the ownership hinged upon a future event, i.e., the development of the trailer park on the ten acres. As noted above, Paragraph II(3) states as follows:

> 3) **The Stock Purchasers agree to develop the Ten Acre tract referred to herein at their expense into a trailer park between approximately 60 and 100 lots for rental to third parties**. Stock Purchasers agree that sellers own 29% of all of the immovable property described herein, to either with any improvements thereon, now or in the future and that sellers will receive 29% of the proceeds of any sale of that property (Emphasis added).

By its plain language, it is unclear whether this paragraph refers to all five parcels of property conveyed in the sale of Bord's Concrete or a promise of 29% ownership in the business entity to be created to develop the trailer park.

We find that the terms of the cash sale in this case are clear that full ownership of the immovable property is transferred to the Stegalls, with no reservation of rights on the part of Bordelon.

Finally, we address Bordelon's argument that *Suva* is controlling in this case. We find *Suva* 234 So.3d 965, distinguishable for a number of reasons. First, in that case, the plaintiffs were the possessors of the land in question at the time of suit and had maintained possession since 1947. Here, Bordelon did not have possession of the disputed property. Second, the trial court found that the parol evidence in question, a purchase agreement, was unambiguous in stating that a brother intended to sell to another brother *all* of the considerable property he owned, with certain, specific exceptions. Here, Bordelon is not arguing that her ownership interest was *mistakenly* omitted from the cash sale, as it was in *Suva*. Indeed, the document on which she relies, the Business Sale, states in no uncertain terms that the immovable property was being transferred, *without reservation*, to the Stegalls. However, that document *also* stated that Bordelon would retain a 29% ownership interest in some portion of the property, and it is not clear from the language of the Business Sale which portion of the property the 29% interest encompasses. To reiterate, the issue here is not a mistake; it is the lack of clarity in the document on which Bordelon relies. Third, the trial court found that the size of the properties transferred and the difficulty of recording such a transfer in 1949 rural Louisiana contributed to the mistake of omitting certain parcels of land. With the current relative ease of recording transactions, mistakes such as the one made in *Suva* are less likely. Finally, in *Suva*, the trial court ruled *in favor* of the plaintiffs. Here, the trial court ruled against Bordelon. Thus, we find no merit in Bordelon's argument that *Suva* is controlling.

In summary, we find no merit in Bordelon's first assignment of error because parol evidence is not admissible in the interpretation of an authentic act. We note that even if we take as true Bordelon's contention that the Business Sale was

9

intended to be a counterletter reserving a 29% ownership in the immovables conveyed to the Stegalls, it is too vague and ambiguous to be enforceable, particularly because the document was drafted by Bordelon's attorney, and any ambiguities are interpreted against Bordelon as the preparer of said document. Therefore, we find no manifest error in the trial court's ruling, and this assignment of error is without merit.

## II.    *Motion for Partial New Trial.*

In Bordelon's second assignment of error she argues that the trial court erred in not granting her motion for partial new trial on the issue of the retained ownership of the immovable property.

We first note that La.Code Civ.P. art. 1972 provides peremptory grounds for granting a new trial when the judgment appears "clearly contrary to the law and the evidence." Furthermore, La.Code Civ.P. art. 1973 provides discretionary grounds for granting a new trial when "there is good cause therefore, except as otherwise provided by law."

Bordelon argues primarily that the court must assign some meaning to the phrase "sellers own 29% of all immovable property described herein" in the Business Sale document. Bordelon argues that the document, as a whole, makes clear that it was the intent of the parties for Bordelon to retain 29% ownership in all of the immovable property conveyed to the Stegalls. Furthermore, Bordelon emphasizes that while the Business Sale does not specifically describe the same immovable property contained in the cash sale, it makes reference to the cash sale, which was recorded and contains a specific property description.

For reasons stated previously in this opinion, we find that the Business Sale, even if accepted as a valid counterletter, was overly vague and ambiguous regarding

10

which portion of the property, whether movable or immovable, that the 29% ownership interest encompasses. Thus, we find Bordelon failed in her burden of proof that a new trial should be granted. Therefore, we find that the trial court did not err in its denial of Bordelon's motion for a partial new trial, and this assignment of error is without merit.

## <u>DECREE</u>

For the reasons stated above, the trial court's judgment, as modified, regarding the ownership of the disputed immovable property at issue and the trial court's denial of Bordelon's motion for a new trial is affirmed. The costs of this appeal are assessed against Mary Alice Dugas Bordelon.

**AFFIRMED.**