Evelyn F. COURTNEY, aka E. F. Courtney, Individually and as Executrix of the Estate of Patsy Greenan, Jr., Deceased, Appellee,

v.

FIRST NATIONAL BANK, COALGATE, Oklahoma, and the McAlester Scottish Rite Education and Charitable Foundation, Appellants.

No. 50077.

Supreme Court of Oklahoma.

Sept. 20, 1977.

---

6. *Young v. Town of Vienna*, 203 Va. 265, 123 S.E.2d 388, 93 A.L.R.2d 86 (1962).

Deaton, Gassaway & Davison, Inc. by Jim F. Gassaway, Ada, for appellee.

Baumert & Ervin, W. S. Horton, McAlester, for appellants.

BARNES, Justice.

This is an appeal from a judgment of the District Court of Coal County in Case No. C–75–7 entitled "Evelyn F. Courtney, a/k/a E. F. Courtney, Individually and as Executrix of the estate of Patsy Greenan, dec. vs. First National Bank of Coalgate, Oklahoma, and the McAlester Scottish Rite Education and Charitable Foundation", in the nature of a declaratory action.

The parties are in agreement as to the facts. On August 29, 1974, Patsy Greenan, Jr., now deceased, purchased certificate of deposit No. 2398 from the First National Bank of Coalgate, Oklahoma. It was in the amount of $5,000.00 and made payable to "Himself and on His Death to McAlester Charitable & Educational Foundation." On July 1, 1973, Greenan purchased certificate of deposit No. 2144 from the same bank in the amount of $17,000.00, made payable to "Himself or Evelyn F. Courtney."

Sometime between May 29 and August 29, 1974, Patsy Greenan endorsed certificate No. 2144 on the back thereof as follows:

"The within Certificate shall be payable on the death of Patsy Greenan, Jr., to McAlester Charitable and Educational Foundation.

/s/ Patsy Greenan, Jr."

Greenan died September 28, 1974. Prior to Greenan's death, Appellee, Evelyn F. Courtney, saw the original certificates in the safety deposit box used jointly by her and decedent. The certificates were in the safety deposit box at the time of his death. As Executrix of his estate, she filed this action seeking both a declaratory judgment against Appellants and an order directing the bank to recognize her rights as Executrix to receive the benefits of both certificates of deposit. The basis of both causes of action was that the attempted transfers by Greenan were intended to become effective upon his death, and for this reason violated the statute of wills.

Appellants answered that the decedent intended to transfer the certificates but retain a "beneficial interest therein during his lifetime" and that the bank president, Mr. Nolan Watson, was also a member of the Appellant Board and was given possession of such certificates on behalf of that foundation. Thus, Appellants argued the same was a completed gift inter vivos even though Mr. Watson immediately redelivered the certificates to decedent and advised decedent to keep them in his safety deposit box.

Appellants did not contest Appellee's contention that the attempted transfers violated the statute of wills, but simply asserted that it was their position that it was a gift inter vivos. If the Appellants are correct, the statute of wills would not come into play since the gift inter vivos would have taken place prior to the death of the donor.

After a hearing, briefs were filed, and on July 23, 1976, the Trial Court rendered its judgment for Appellee, holding that there was not a gift inter vivos of the endorsed certificates; that there was not an unconditional delivery; that the gift was only effective on death; and that the testator continued to have possession and control of the certificates until his demise. The Trial Court ordered the bank to deliver to the Executrix the proceeds of the certificates, together with earned interest.

Appellant cites a number of cases, including *Ross v. Watkins,* 80 Ind.App. 487, 141 N.E. 477 (1923), and *Hudson v. Gleeson,* 171 Wis. 238, 177 N.W. 14 (1920), for the proposition that the delivery of a certificate of deposit which is payable to the owner, and payable on the owner's death to one designated therein, to a third party stakeholder, and received and accepted by said third party for the benefit of the one designated therein, is a completed gift inter vivos, and the mere postponement of its enjoyment until the death of the donor is not material and will not defeat the gift nor constitute a

conditional delivery, nor will a reservation of interest income accruing on the certificates during the donor's lifetime destroy the effect of the transaction as a present gift. That is not the question in this case.

The question we must answer is, did the decedent relinquish control and dominion over these certificates so as to constitute a completed inter vivos gift.

The record testimony of Mr. Watson, president of First National Bank of Coalgate, reflects that he was a member of the Consistory of the McAlester Charitable and Educational Foundation. Watson testified that decedent delivered the certificates over to him; that he accepted the certificates as a representative of the foundation. Thereafter, Watson handed the certificates back to decedent and told him to put them in his safety deposit box so that he could get the interest on them when the interest was due.

Appellant asserts that decedent was simply to draw the interest and could have done nothing with the certificates without the consent of the donee or its representative, Mr. Watson. However, Watson testified concerning the revocability of the purported gift:

"Q. All right sir, could Mr. Greenan have revoked the provisions of these two certificates prior to his death?

"A. Perhaps he could have, yes sir.

"Q. Well, had he walked into the bank and said I want to change it, he would have been permitted to have done so, wouldn't he?

"A. I am sure he could have.

"Q. Could he have pledged the certificates of deposit as collateral for a loan?

"A. I think—yes sir, he could have borrowed more money than that at any time from the bank."

Appellee Courtney testified she and her brother had a joint safety deposit box and that each of them had a key. Both used the box and she went to the box many times for her brother.

This brings us to the question of whether there was sufficient divestiture of control to constitute an inter vivos gift. In *Waitman v. Waitman,* 505 P.2d 171 (Okl.1972), this Court quoted from *Harmon et al. v. Kerns et al.,* 169 Okl. 290, 36 P.2d 898 (1934), the second syllabus:

" 'To constitute a valid gift inter vivos there must be a donor competent to make it; freedom of will on his part; an intention on his part to make it; a donee capable of taking the gift; the gift must be complete, and nothing left undone; the property must be delivered by the donor, and accepted by the donee; the gift must go into immediate and absolute effect; the gift must be gratuitous; *the gift must be irrevocable.*' " (Emphasis added)

The third syllabus in *Harmon* stated:

" 'After the death of an alleged donor, in order to establish a gift inter vivos, the evidence must be clear, explicit, and convincing in support of every element necessary to constitute a valid gift.' "

In the instant case, we think that even if Appellant had discharged its burden as to all other elements of a valid gift inter vivos, the gift still fails on the issue of whether it was irrevocable. Decedent could have changed the payee, could have pledged either or both certificates as collateral for a loan, could have cashed the certificates in or done anything else he desired so long as they were in his possession and control.

We hold that the intended gift of these two certificates of deposit was not a valid inter vivos gift, and, in addition, we find that the transfer was in the nature of a testamentary disposition not in accordance with the statute of wills and was not a valid testamentary gift.

AFFIRMED.

LAVENDER, V. C. J., and WILLIAMS, IRWIN, BERRY, and SIMMS, JJ., concur.