In the Matter of the ESTATE OF Glen Clifford STINCHCOMB, Deceased.

Corene Jeanie STINCHCOMB, Appellant,

v.

Glen Lee STINCHCOMB, Executor, Appellee.

In the Matter of the ESTATE OF Glen Clifford STINCHCOMB, Deceased.

Corene Jeanie STINCHCOMB, Appellant,

v.

Glen Lee STINCHCOMB, Executor, Appellee.

In the Matter of the ESTATE OF Glen Clifford STINCHCOMB, Deceased.

Corene Jeanie STINCHCOMB, Appellant,

v.

Glen Lee STINCHCOMB, Executor, Appellee.

In the Matter of the ESTATE OF Glen Clifford STINCHCOMB, Deceased.

Corene Jeanie STINCHCOMB, Appellant,

v.

Glen Lee STINCHCOMB, Executor, Appellee.

In the Matter of the ESTATE OF Glen Clifford STINCHCOMB, Deceased.

Corene Jeanie STINCHCOMB, Appellant,

v.

Glen Lee STINCHCOMB, Executor, Appellee.

Nos. 58383, 58384, 58660, 58712 and 58713.

Supreme Court of Oklahoma.

Dec. 20, 1983.

Jack L. Freeman, James H. Buxton, Freeman & Buxton, Edmond, for appellant.

Byrne A. Bowman, Oklahoma City, for appellee.

## OPINION ON REHEARING

### PER CURIAM:

The parties to this appeal have each filed petitions for rehearing following the adoption of our unpublished opinion dated June 14, 1983. The appellant's petition for rehearing is denied, however the appellee's is granted, and the issue raised therein is dealt with in this opinion on rehearing.

In Texas in November 1971, Jeanie Stinchcomb, appellant, met Glen C. Stinchcomb, the decedent and appellee's father. Mr. Stinchcomb was still married at the time to his former wife, Agnes Stinchcomb. Appellant and Mr. Stinchcomb began seeing one another and in 1972, appellant moved to Oklahoma City, where Mr. Stinchcomb had arranged for her to have a furnished apartment. On August 7, 1975, Mr. Stinchcomb and Agnes Stinchcomb were divorced.

Appellant testified that within a week of the divorce, she and Mr. Stinchcomb had agreed to live together as husband and wife. In December 1975, appellant moved into Mr. Stinchcomb's house with him. Various testimony was given to the effect that Mr. Stinchcomb bought her two rings, referred to her as Mrs. Stinchcomb on several occasions, lived with her in a "typical" marriage setting, and that appellant's son introduced Mr. Stinchcomb as his stepfather. On the other hand, in June 1976, a new home was purchased by Mr. Stinchcomb, and he took the title in his name. He filed his income tax returns as a single man.

On January 9, 1978, the appellant and Mr. Stinchcomb signed an antenuptial agreement stating that both parties were single, but they intended to get married. Additionally, Mr. Stinchcomb made a codicil to his will leaving all of his furniture and household goods to appellant and an interest in his Northwest Expressway property from which appellant was to receive the proceeds of a Texaco service station lease. The proceeds are $48,000.00 per year rental for ten (10) years with options to renew.

On February 21, 1978, the couple had a ceremonial marriage performed in Rio Grande City, Texas.

On June 20, 1981, Mr. Stinchcomb suffered a stroke. After admitting him to the hospital, appellant went to the bank and got $30,000 from a safety deposit box. With this money she bought a mink coat, gave $5,000 to her lawyer and carried the remaining $20,000 in her car before delivering it to a friend from Texas for safekeeping. Further testimony was elicited to the effect that appellant forged Mr. Stinchcomb's signature to the assignment on a car title and had a new title issued to herself, and caused fictitious hotel registration bills to be prepared and introduced into evidence.

On September 17, 1981, Mr. Stinchcomb died. On September 22, appellant signed an affidavit stating that Mr. Stinchcomb died on September 17, leaving no valid will. Glen Lee Stinchcomb, appellee, was appointed as executor of his father's estate.

The trial court heard this case and held that appellant should only receive the interest in the lease property that Mr. Stinchcomb had left to her in the codicil to his will; thereby, upholding the validity of the antenuptial agreement, and giving no credence to the claims of appellant concerning the existence of a common-law marriage.

Appellant's basic contention is that she was the common law wife of Mr. Stinchcomb before the antenuptial agreement, codicil to the will, or ceremonial marriage. Therefore, she contends the antenuptial agreement is in essence a post nuptial agreement which purported to change the pre-existing common law marriage relationship, thus, rendering it void. Consequently, she wants the statutory one-third widow's share of the estate instead of the proceeds of the lease.

A party asserting a common law marriage must prove the following elements: an actual and mutual agreement

between the spouses to be husband and wife; a permanent relationship; an exclusive relationship, proved by cohabitation as man and wife; and the parties to the marriage must hold themselves out publicly as husband and wife, *Matter of Phifer's Estate,* 629 P.2d 808 (Okl.App.1981). Appellant introduced extensive testimony that would seem to create a presumption of the existence of a common law marriage. However, a common law marriage must be established by evidence that is clear and convincing. *Maxfield v. Maxfield,* 258 P.2d 915 (Okl.1953). Several facts interrelate to destroy the apparent presumption: Mr. Stinchcomb purchased a house and took title in his name alone, the antenuptial agreement stated that the parties to the agreement were single, Mr. Stinchcomb filed his income tax return as a single man, and in the codicil to the will, Mr. Stinchcomb stated that he intended to marry appellant. The appellant failed to prove a pre-existing common law marriage by clear and convincing evidence; therefore, the antenuptial agreement is valid.

■ Appellant also contends that the cash in the safe deposit box was hers as a result of the Safe Deposit Box Rental Contract, which recites in part that the contents were subject to a joint tenancy with a right of survivorship. The trial court held that the contents of the safe deposit box was the property of Mr. Stinchcomb and therefore belongs to the estate. We agree with the trial court and hold that although the Stinchcombs were joint lessees of the box, the Safe Deposit Box Rental Contract does not contain any language explicitly granting a joint tenancy in the contents of the box.

There are no Oklahoma cases directly on point on this issue, however in *Annotation,* 14 A.L.R.2d 948, 954, it is stated that in a clear majority of jurisdictions where the issue has arisen, deposit of articles in a jointly leased safe deposit box, of itself, works no change in title unless there is an express agreement that the contents of the box shall be joint property. The annotation notes that language in a lease descriptive of

joint tenancy or of the incident of survivorship, unless clearly referable to the contents, is generally construed as running no further than use of the box. Words to the effect that the survivor has the right of possession and removal of contents are literally construed, so that the decedent's personal representative may require surrender of effects traceable to the decedent's ownership.

We find persuasive the following authorities that have addressed this issue. In *Stephens v. First National Bank of Nevada,* 65 Nev. 352, 196 P.2d 756 (1948), the court held the fact that under the safe deposit box rental agreement, either of the parties independent of the other, had the right of access to the box and its contents with right to remove all or part of the contents and to surrender the box without consent or knowledge of the other, was not determinative of the right of ownership of the contents of the box. The court in *Multi-Clean Products, Inc. v. Kasper,* 3 Ill.App.3d 12, 279 N.E.2d 111 (1971), stated unequivocally that joint ownership of a safe deposit box indicates nothing as to ownership of its contents.

In *In Re Wilson's Estate,* 404 Ill. 207, 88 N.E.2d 662 (1949), a husband and wife leased a safe deposit box as joint tenants with the right of survivorship. In holding that the contents of the box did not become the property of the wife after the husband's death, the court stated 88 N.E.2d at 660: "The recital of the capacity in which parties rent a safety deposit box from a bank does not express an intention to make a joint tenancy of its contents some years thereafter." The court noted that the courts of other jurisdictions have also decided that renting a lockbox in a bank in the names of two or more persons, as joint tenants with the right of survivorship does not on the death of one vest the personal property in the box in the survivor. *Accord, Bauerschmidt v. Bauerschmidt,* 97 Md. 35, 54 A. 637 (1903).

■ We therefore hold that absent an express agreement that the contents of a safe deposit box shall be joint property, a

joint lease in and of itself alone, does not create a joint tenancy in the contents of the box.

We come then to the question of whether there was a valid and perfected intervivos gift by the husband to the wife. To constitute a valid intervivos gift there must be donative intent of donor; actual delivery of the subject matter of the gift, unless the gift is chose in action when delivery must be of a variety of which it is most capable; *and that donor strip himself of all ownership and dominion over subject-matter of gift. Frazier v. Oklahoma Gas & Elect. Co.,* 178 Okl. 512, 63 P.2d 11 (1937). (*Emphasis added.*) After the death of an alleged donor, in order to establish an intervivos gift, the evidence must be clear, explicit, and convincing in support of every element necessary to constitute a gift. *Foster v. Rose,* 205 Okl. 397, 238 P.2d 332 (1952).

Although appellant testified that her husband had told her to take the money, other evidence in the record supports the opposite conclusion—that there had been no intervivos gift or creation of a true joint tenancy in the $30,000. This evidence includes several statements made by Mr. Stinchcomb from his hospital bed to the effect that the $30,000 was his and that his wife was stealing it. Although less proof is required to prove a gift to a relative than to a stranger, *cf. Foster, supra, (addressing degree of proof required where donee is brother or near blood relative)*, whether there had been a perfected gift remains a question of fact. We distinguish the situation here from those in which a rebuttable presumption of fact of a gift between a husband and wife arises where there has been a conveyance of property by one to the other in the other's name without consideration. *See, Mohr v. Detamore,* 187 Okl. 278, 102 P.2d 850 (1940).

In matters of equitable cognizance, findings and judgment of the trial court will not be disturbed on appeal unless it appears that such findings are clearly against the weight of the evidence. The trial court's findings that the $30,000 was the property of the deceased and belonged to the estate was not clearly against the weight of the evidence.

Appellant further contends that the appellee is not entitled to recover an attorney's fees for the litigation of the common law marriage. However, the record is devoid of any order or journal entry reflecting a hearing on attorney's fees, ordering payment of attorney's fees, or rendering judgment against appellant in favor of appellee for attorney's fees. A finding or declaration short of a judgment determining the amount is not a judgment. *Porter v. Tayer,* 385 P.2d 808, 809, 815 (Okl.1963). Therefore, this issue is not before us.

Appellant's next contention is that the trial court erred in ordering the widow to reimburse the estate for actual and potential expenses to the estate in connection with the Texaco lease. We find no merit in this contention.

The trial court properly held that since appellant is receiving the benefit of the proceeds of the lease, she should bear the expense of the acquisition of the lease from the income from that lease. The legal maxim "He who takes the benefit must bear the burden" is applicable in the present situation. The trial court did not abuse its discretion in ordering the appellant to reimburse appellee for the expenses connected with the lease.

Appellant's final contention is that the trial court's order that appellee be reimbursed from the proceeds of the Texaco lease for any widow's allowance paid during the administration of the estate is an abuse of discretion. The trial court held that the appellee should pay the appellant $1,500 per month as a widow's allowance during the proceedings. However, the court further ordered that the appellee should be reimbursed for any widow's allowance paid during the administration of the proceedings once the proceeds of the lease were paid to the appellant by Texaco. Title 58 O.S.1981, § 314 states that "... the Court may in its discretion make such reasonable allowance

out of the estate as shall be necessary for the maintenance of the family, according to their circumstances during the progress of the settlement of the estate...."

■ Since the trial court adequately weighed the circumstances and equities of this matter, we find that the trial court did not abuse its discretion in rendering its decision that the appellant must reimburse the estate the amount she is paid as widow's allowance once she receives proceeds from Texaco.

AFFIRMED.

BARNES, C.J., and LAVENDER, DOOLIN, HARGRAVE, OPALA and WILSON, JJ., concur.

SIMMS, V.C.J., dissents.

### ORDER

The Petition for Rehearing filed by Appellee Glen Lee Stinchcomb is granted. The Petition for Rehearing filed by Appellant Corene Jeanie Stinchcomb is denied.

IT IS HEREBY ORDERED that the unpublished opinion of this Court promulgated and filed on June 14, 1983, is vacated, withdrawn, and superceded by the substitute opinion of this Court adopted this date.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE this 20th day of December, 1983.

˙ BARNES, C.J., and LAVENDER, DOOLIN, HARGRAVE, OPALA and WILSON, JJ., concur.

SIMMS, V.C.J., dissents.