**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                          Elisabeth A. Shumaker
Clerk                                                            Chief Deputy Clerk

September 20, 1999

**TO:**  ALL RECIPIENTS OF THE OPINION

**RE:**  98-9005, *Estate of Davenport v. CIR*
Filed on July 13, 1999

The slip opinion cover page omitted Tax Court case number 23011-94.  A copy of the corrected cover page is attached.

Sincerely,
Patrick Fisher, Clerk of Court

By:    Keith Nelson
Deputy Clerk

encl.

F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**JUL 13 1999**

**PATRICK FISHER**
Clerk

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

ESTATE OF BIRNIE M.
DAVENPORT, Deceased, PATRICIA
L. VESTAL, Personal Representative,

    Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

No. 98-9005

## APPEAL FROM THE UNITED STATES TAX COURT
### (T.C. Nos. 22900-94 & 23011-94)

Thomas G. Potts of James, Potts & Wulfers, Inc., Tulsa, Oklahoma, for
Petitioner-Appellant.

Laurie Snyder (Loretta C. Argrett, Assistant Attorney General, and Ann B.
Durney with her on the brief), Tax Division, Department of Justice, Washington,
D.C., for Respondent-Appellee.

Before **BALDOCK**, **McKAY**, and **BRORBY**, Circuit Judges.

**McKAY**, Circuit Judge.

Petitioner-Appellant, the Estate of Birnie M. Davenport as represented by Patricia L. Vestal, appeals from a decision of the United States Tax Court finding the Estate liable for a federal gift tax deficiency in the amount of $822,653.00 and a penalty in the amount of $205,663.00. This dispute involves a gift tax deficiency notice for the third quarter of 1980 issued by the Commissioner of Internal Revenue with respect to three alleged *inter vivos* gifts of stock in Hondo Drilling Company, Inc. The Tax Court determined that, during the third quarter of 1980, the decedent, Birnie M. Davenport, completed taxable gifts of a total of 1,610 shares of Hondo stock to her niece and two nephews—Ms. Vestal, Gordon E. Davenport, and Charles E. Botefuhr. In this appeal, Petitioner argues that Birnie did not complete *inter vivos* gifts of the stock during 1980 because, under Oklahoma law, she did not have a sufficient ownership interest in the stock to do so. Petitioner also claims that even if Birnie had an ownership interest in the stock sufficient to effect *inter vivos* transfers of it, she did not complete the gifts in the third quarter of 1980. That is, because Birnie neither gave the stock certificates to her niece and nephews nor transferred title to the stock into their names, she did not sufficiently deliver the stock to her niece and two nephews to complete the alleged *inter vivos* gifts.

I.

Birnie M. Davenport and her sister, Elizabeth G. Davenport, shared a home for most of their adult lives. In approximately 1954, Birnie and Elizabeth entered into an oral agreement pursuant to which they shared and commingled their assets and earnings. Under the agreement, Elizabeth held legal title to the sisters' shared assets and earnings, but the sisters nonetheless considered their assets and earnings to be jointly owned. The sisters also maintained joint checking and savings accounts, and they shared equally in the construction and maintenance costs associated with their home. Included in the sisters' assets were 3,220 shares of Hondo stock. The distribution of the Hondo stock called for in the sisters' wills, which contained mirror provisions, was consistent with their joint ownership agreement. In short, even though Birnie may not have held legal title to the Hondo stock, her ownership of the stock was presumed in her will, which provided for the distribution of 1,610 shares of the stock in equal parts to Ms. Vestal, Mr. Davenport, and Mr. Botefuhr.

During the period of the oral agreement, Elizabeth and Birnie filed federal and state income tax returns in which they reported their wage earnings separately. However, the sisters reported one-half of their collective earnings, losses, and deductions associated with their investments on Elizabeth's returns and one-half on Birnie's returns. Corinne Childs, who prepared Elizabeth's and

Birnie's tax returns beginning in 1965, believed that the sisters owned their assets jointly and treated their assets in accordance with that belief in their tax returns. Between 1965 and 1979, several of Birnie's and Elizabeth's federal income tax returns were audited. In each case, the Internal Revenue Service accepted the sisters' explanation of their joint ownership arrangement and accepted the reporting of fifty percent of their earnings, losses, and deductions on each sister's tax return.

Elizabeth died on December 2, 1979, and Ms. Vestal, Mr. Davenport, and Mr. Botefuhr were appointed as coexecutors of Elizabeth's estate.[1] Ultimately, the executors filed federal and state estate tax returns which reported one-half of the stock and bonds subject to the oral agreement in Elizabeth's gross estate, even though the assets were titled solely in Elizabeth's name. Included in Elizabeth's gross estate were 1,610 shares of Hondo stock, valued at $804 per share. Pursuant to the sisters' oral agreement, the executors of Elizabeth's estate considered the remaining 1,610 shares of Hondo stock as belonging to Birnie.

After examining the federal estate tax return for Elizabeth's estate, the IRS issued a notice of deficiency. The IRS asserted that all of the assets held in Elizabeth's name should have been included in her gross estate, including the 3,220 shares of Hondo stock purportedly owned jointly by Birnie and Elizabeth.

---

[1]Mr. Botefuhr resigned as a coexecutor in September 1980.

It also claimed that the Hondo stock should have been valued at $3,019 per share. Ms. Vestal and Mr. Davenport petitioned the Tax Court on behalf of Elizabeth's Estate, and the parties subsequently settled without a trial. Pursuant to the settlement, the IRS conceded that the sisters owned their assets jointly and that 1,610 of the sisters' 3,220 shares of Hondo stock would be included in Elizabeth's gross estate at a value of $2,400 per share. The Tax Court entered an agreed decision in recognition of the settlement on May 24, 1984.

Meanwhile, on February 14, 1983, the District Court of Tulsa County, Oklahoma, issued an order in response to a petition filed by Ms. Vestal and Mr. Davenport requesting "instructions pertaining to the [i]nventory of certain real and personal properties of [Elizabeth's] [e]state." Appellant's App. at 187. The court determined that although Elizabeth was the record owner of the sisters' joint assets, including the 3,220 shares of Hondo stock, she "owned only an undivided fifty percent (50%) interest in said properties and held an undivided fifty percent (50%) interest in said properties for Birnie." Id. In accordance with this determination, the court ordered the coexecutors of Elizabeth's estate to assign and convey record title to an undivided fifty percent of the subject property to Birnie.

In 1980, Birnie decided to transfer what she believed to be her 1,610 shares of Hondo stock to her niece and two nephews—Ms. Vestal, Mr. Davenport, and

Mr. Botefuhr—in roughly equal portions. Consequently, Birnie entered into two sales agreements dated July 2, 1980, with Ms. Vestal and Mr. Davenport, which Birnie executed on September 26, 1980. Pursuant to the sales agreements, Birnie sold 536 and 537 shares of Hondo stock to Ms. Vestal and Mr. Davenport, respectively, at a discount price of $804 per share.[2] As consideration for the stock, Ms. Vestal and Mr. Davenport agreed to pay $448,353.50 and $449,175.50, respectively, in twenty annual installment payments commencing July 2, 1986. In addition, Ms. Vestal and Mr. Davenport agreed to pay six percent interest annually on the unpaid principal.

Under the sales agreements, Birnie represented and covenanted that she was the sole owner of, and had the right to sell, the stock. She also purported to convey good and marketable title to the shares of stock along with the right to receive dividends paid on the stock after the date of the agreements. In addition, Birnie represented that "simultaneously[] with the execution of this agreement, [she] directed a written order to Hondo Drilling Company . . . to pay all such dividends" to Ms. Vestal and Mr. Davenport. Id. at 161, 171. Apparently in recognition of the fact that Birnie did not hold legal title to the stock, the sales agreements also indicated that Birnie could not "effect the transfer" of the Hondo

---

[2]The parties stipulated that the fair market value of the Hondo stock in the third quarter of 1980 was $2,000 per share.

stock until Elizabeth's estate was settled.  Id. at 162, 172.  However, to expedite the transfer, the agreements provided that "Seller has simultaneously, with the execution of this agreement, delivered to the Buyer stock powers signed in blank by Seller."  Id.

Pursuant to the sales agreements and the corresponding installment notes, Ms. Vestal and Mr. Davenport each made down payments of $1,000.  They also made three interest payments to Birnie of around $13,500 per payment.  On March 5, 1982, however, Birnie forgave the indebtedness owed to her under the installment notes.  Birnie filed a federal gift tax return on March 31, 1983, reflecting the forgiveness of the amounts due under the installment notes.

Rather than executing a sales agreement with Mr. Botefuhr, Birnie executed a deed of gift purporting to transfer 537 shares of Hondo stock to him on July 7, 1980.  The deed of gift was recorded in Tulsa County, Oklahoma, on the same date.  On November 28, 1980, Ms. Vestal, Mr. Davenport, and Mr. Botefuhr executed an agreement pursuant to which Mr. Botefuhr agreed to file any required gift tax returns and pay any gift taxes due with respect to the Hondo stock he received from Birnie.  Because of Mr. Botefuhr's agreement to pay the gift taxes, Ms. Childs testified that she did not think that Birnie was required to file a gift tax return with respect to her transfer of 537 shares of Hondo stock to Mr. Botefuhr.  In spite of this agreement, Mr. Botefuhr never filed a gift tax return

with respect to the Hondo stock, and he testified at trial that he did not think he needed to do so until the Hondo stock "was determined to be Birnie's." Id. at 350.

After Elizabeth's death but before July 1980, Birnie received dividend payments on 1,610 shares of Hondo stock directly from Elizabeth's estate. In fact, Birnie reported $48,300 in Hondo dividends on her 1980 income tax return. After July 1980, Ms. Vestal, Mr. Davenport, and Mr. Botefuhr each received dividend payments on the shares of Hondo stock they received from Birnie. Apparently because title to the stock was not transferred until April 14, 1981, prior to that date the dividends were paid to Elizabeth's estate and then transferred directly to Ms. Vestal, Mr. Davenport, and Mr. Botefuhr. On April 14, 1981, however, at the direction of Ms. Vestal and Mr. Davenport, the record ownership of 1,610 shares of Hondo stock was transferred on the Hondo stock ledger from Elizabeth's name to the names of Ms. Vestal (536 shares), Mr. Davenport (537 shares), and Mr. Botefuhr (537 shares). Dividends were paid directly to those individuals after that date.

On July 15, 1981, Mr. Botefuhr redeemed his 537 shares of Hondo stock at a price of $2,190 per share. He reported the capital gain he made by redeeming the Hondo stock—which he described as "acquired by inheritance"—on his 1981 income tax return. He also reported the dividends he earned on the Hondo stock

on his 1981 income tax return.

Birnie died on February 6, 1991. In preparing Birnie's estate tax returns, Ms. Childs discovered that no federal gift tax return had been filed with respect to the 1980 Hondo stock transfer to Mr. Botefuhr. Ms. Childs therefore prepared a gift tax return reflecting a gift of 537 shares of Hondo stock in the third quarter of 1980 from Birnie to Mr. Botefuhr. She filed the gift tax return along with Birnie's estate tax return on November 7, 1991. For purposes of the gift tax return, Ms. Childs valued the Hondo stock at $804 per share and calculated the tax due as $95,322.00. Although Ms. Vestal and Mr. Davenport signed the gift and estate tax returns filed in connection with Birnie's estate, Mr. Botefuhr refused to sign either return.

The IRS mailed Petitioner a statutory notice of deficiency for estate and gift taxes on September 20, 1994. The notice indicated a gift tax deficiency of $1,422,154.00 and an addition to the tax in the amount of $355,538.50. See id. at 21. Petitioner responded by timely filing petitions to contest the deficiencies in the Tax Court. Following a bench trial, the Tax Court found that Petitioner owed a federal gift tax deficiency in the amount of $822,653 and a penalty of $205,663.[1] At trial, Petitioner argued that Birnie's and Elizabeth's arrangement

---

[1]Petitioner has not challenged the Tax Court's determination that an overpayment of federal estate tax in the amount of $144,030.00 was due to Petitioner.

regarding assets constituted a business partnership. As a result, Birnie forfeited her interest in the assets of the partnership by failing to wind up the affairs of the partnership upon its dissolution, i.e., upon Elizabeth's death. According to the Tax Court, the sisters did not enter into a business partnership with respect to their assets. Instead, their arrangement "merely amounted to co-ownership," R., Vol. 1, Doc. 25 at 21, and accordingly, the sisters "were merely co-owners of the 3,220 shares of Hondo stock." Id. at 22. The Tax Court also determined that Birnie made completed, taxable gifts to her niece and two nephews in July 1980. Specifically, the court determined that under Oklahoma law, Birnie had sufficient ownership rights in her half of the stock to effect a transfer and that she intended to make a gift. See id. at 24. The court also noted that "the fact that delivery of [the Hondo] stock certificates was delayed did not prevent the gift from being complete in July of 1980. Birnie, through the use of the sales agreements and deed of gift, accomplished sufficient delivery to put the gift beyond her dominion and control." Id. at 24 n.9. Additionally, the court held that the deficiency notice mailed on September 20, 1994, was timely because the applicable statute of limitations did not begin to run until Birnie's estate filed the federal estate and gift tax returns on November 7, 1991. See id. at 25. Petitioner timely filed a notice of appeal, and we exercise jurisdiction pursuant to 26 U.S.C. § 7482.

We review de novo the Tax Court's legal conclusion that Birnie effected

*inter vivos* gifts of the Hondo stock to her niece and two nephews in the third quarter of 1980. See Anderson v. Commissioner, 62 F.3d 1266, 1270 (10th Cir. 1995). We review the factual findings underlying the Tax Court's conclusion for clear error. See id.

II.

The federal gift tax is imposed on transfers of property by gift, see 26 U.S.C. § 2501(a)(1), and it is "a primary and personal liability of the donor, is an excise upon his act of making the transfer, [and] is measured by the value of the property passing from the donor." 26 C.F.R. § 25.2511-2(a). The gift tax also applies to transfers "for less than an adequate and full consideration in money or money's worth." Id. § 2512(b). In such a case, the gift is "the amount by which the value of the property exceed[s] the value of the consideration." Id. In analyzing the applicability of the gift tax to the transactions in question, we examine the substance of the transactions, rather than their form. See Gregory v. Helvering, 293 U.S. 465, 469-70 (1935); Heyen v. United States, 945 F.2d 359, 362 (10th Cir. 1991). Generally, "[t]he application of the tax is based on the objective facts of the transfer and the circumstances under which it is made." 26 C.F.R. § 25.2511-1(g)(1). Although donative intent "is not an essential element in the application of the gift tax," id., the presence of donative intent suggests

-11-

that a gift has been made. See Heyen, 945 F.2d at 363.

"[T]he general and longstanding rule in federal tax cases [is] that although state law creates legal interests and rights in property, federal law determines whether and to what extent those interests will be taxed." United States v. Irvine, 511 U.S. 224, 238 (1994); see also Autin v. Commissioner, 109 F.3d 231, 233 (5th Cir. 1997) ("No court considering federal taxation problems has challenged the premise that state law determines the nature of the property right; federal law's task is to determine the appropriate tax treatment when such property rights are transferred."). However, in federal taxation cases, state law controls only to the extent that certain statutory provisions of the federal revenue laws make their application dependent on state law. See Irvine, 511 U.S. at 238-39 (citing United States v. Pelzer, 312 U.S. 399, 402-03 (1941)); United States v. Wingfield, 822 F.2d 1466, 1473 (10th Cir. 1987). In this case, while federal law determines the taxability of the interests and transactions at issue, we employ Oklahoma law in analyzing the nature of Birnie's ownership interest in the Hondo stock and in determining whether she completed a gift of the stock to her niece and two nephews during the third quarter of 1980. To constitute a valid *inter vivos* gift under Oklahoma law, the donor must be competent to make a gift. See In re Estate of Hoyle, 866 P.2d 451, 453 (Okla. Ct. App. 1993) (citing Davis v. National Bank of Tulsa, 353 P.2d 482, 486 (Okla. 1960)); Frazier v. Oklahoma

Gas & Elec. Co., 63 P.2d 11, 13 (Okla. 1936). In addition, there must be donative intent, delivery of the gift, and the "donor must strip himself of all ownership and dominion over the subject matter." In re Estate of Rolater, 542 P.2d 219, 222 (Okla. Ct. App. 1975); see Stinchcomb v. Stinchcomb (In re Estate of Stinchcomb), 674 P.2d 26, 30 (Okla. 1983).

Petitioner raises two primary arguments on appeal: (1) Birnie did not have a sufficient ownership interest in the 1,610 shares of Hondo stock to complete *inter vivos* gifts of the stock between July 1, 1980 and September 1, 1980; and (2) even if Birnie was competent to effect *inter vivos* transfers of the stock, she did not complete the gifts because she did not sufficiently deliver the 1,610 shares of Hondo stock to her niece and two nephews during the third quarter of 1980.[2]

---

[2]Petitioner raises several additional arguments. First, Petitioner asserts that the Tax Court's jurisdiction over this dispute is contingent upon whether this court upholds the Tax Court's determination that a gift occurred within the calendar quarter of July 1, 1980, to September 1, 1980. We agree. A valid deficiency notice is a prerequisite to Tax Court jurisdiction. See Miles Prod. Co. v. Commissioner, 987 F.2d 273, 275 (5th Cir. 1993); see also 26 U.S.C. § 6214(b) (stating that, although the Tax Court may redetermine gift tax deficiencies for any calendar year or quarter, it "shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid"); Tax Ct. R. 13, 26 U.S.C. foll. § 7453 ("[T]he jurisdiction of the Court depends . . . upon the issuance by the Commissioner of a notice of deficiency."). Further, "[i]t is well established that a deficiency notice is invalid if based upon incorrect taxable periods." Miles Prod., 987 F.2d at 276. It follows that the Tax Court does not have jurisdiction if a deficiency notice sets forth an incorrect taxable period. See id. (citing Columbia River Orchards, Inc. v. Commissioner, 15 T.C. 253, 260 (1950)); Sanderling, Inc. v. Commissioner, 571 F.2d 174, 176

(continued...)

-13-

Petitioner does not appear to challenge the Tax Court's determination that Birnie and Elizabeth held their assets as co-owners nor does Petitioner appeal the Court's conclusion that the sisters did not form a business partnership.

## A.

The thrust of Petitioner's first argument is that, because Birnie did not have legal title to the stock, she was not competent to give it away. Specifically,

_____

[2](...continued)
(3rd Cir. 1978) (noting that Tax Court lacks "jurisdiction where the deficiency notice does not cover a proper taxable period"); cf. Scar v. Commissioner, 814 F.2d 1363, 1370 (9th Cir. 1987) ("Failure to comply with statutory requirements renders the deficiency notice null and void and leaves nothing on which Tax Court jurisdiction can rest."). A deficiency notice may be valid even if it contains error "where the taxpayer has not been misled as to the proper year involved or the amounts in controversy." Sanderling, 571 F.2d at 176. In this case, the deficiency notice indicates that taxable events took place in the calendar period ending September 30, 1980. Because the taxable period is correct in light of the result we reach here, we need not examine whether Petitioner was misled as to year of the gift or the amount of the alleged deficiency to determine whether the Tax Court may exercise jurisdiction.

Second, Petitioner states that the Commissioner unnecessarily and unprofessionally "denigrat[ed]" and "vilifi[ed]" Ms. Vestal in the appellate brief it submitted to this court. Appellant's Reply Br. at 3. However, because we believe the Commissioner's brief is professional and merely asserts the IRS's legal position and because this issue is not dispositive on the merits, we do not address it further.

Third, Petitioner argues that the Commissioner improperly raised the issue of judicial estoppel before this court. Because we do not rely on judicial estoppel in affirming the Tax Court's decision, we also do not reach this issue.

-14-

Petitioner argues that Birnie did not possess "legal title, possession, dominion, and control of [the Hondo] stock before February 14, 1983," Appellant's Opening Br. at 26, the date on which the Oklahoma state court determined that Birnie owned a fifty percent interest in the Hondo stock. As a result, Birnie could not have transferred the stock until after that date. Petitioner further argues that, because the Hondo stock was in Elizabeth's name during the relevant time period, Elizabeth's estate possessed dominion and control over the stock. Thus, only Elizabeth's estate could have transferred title to the stock during the relevant period, which it did not do until April 14, 1981.

To complete a taxable gift, federal tax regulations require the donor to "so part[] with dominion and control [over the gift] as to leave in him no power to change its disposition." 26 C.F.R. § 25.2511-2(b). While this requirement implies that the donor must have some dominion and control with which to part, neither the tax code nor the federal tax regulations shed further light on the type of ownership interest necessary to effect a taxable *inter vivos* gift. We therefore turn to Oklahoma law to analyze the sufficiency of Birnie's interest in the Hondo stock. In particular, we must examine whether Birnie's lack of legal title to the stock prevented her from effecting *inter vivos* transfers of the stock.

Initially, we note that the Oklahoma state court's February 14, 1983 conclusion that Birnie owned fifty percent of the Hondo stock is not

-15-

determinative of the taxation issues at stake in this case. First, we are not bound by the Oklahoma court's determination. See Commissioner v. Estate of Bosch, 387 U.S. 456, 457 (1967) (stating that where federal tax liability "turns upon the character of a property interest held and transferred . . . under state law, federal authorities are not bound by the determination made of such property interest by a state trial court"). Second, while the Oklahoma court's decision may have *declared* or *clarified* the status of Birnie's ownership interest for purposes of the probate proceedings involving Elizabeth's estate, the order did not *create* or *alter* the status of Birnie's ownership interest. That is, the court simply sanctioned an ownership arrangement that was already in existence at the time—it did not *vest* in Birnie anything she did not already own. With respect to these proceedings, the date of the Oklahoma probate court's determination is therefore irrelevant for purposes of establishing the date on which Birnie acquired her ownership interest.

Because Petitioner does not appear to challenge the Tax Court's determination that Elizabeth and Birnie were co-owners of the Hondo stock, we assume that the sisters were co-owners for all periods of time relevant to our inquiry. Oklahoma law allows joint owners of property to alienate or otherwise transfer their respective interests freely. See Starnes v. Miller, 505 P.2d 180, 182 (Okla. 1972) (stating that a cotenant may "'dispose of his interest as he sees proper. He may sell it or give it away; his cotenant not being concerned or

-16-

interested in the consideration received'" (quoting <u>Kerfoot v. Greenlee</u>, 209 P. 444, 445 (Okla. 1922)); <u>see also</u> <u>Gilles v. Norman Plumbing Supply Co. of Okla. City, Inc.</u>, 549 P.2d 1351, 1353 (1975) (noting that each tenant in common "would prima facie own an undivided interest in the [property] . . . and each could sell, convey or dispose of only his interest without affecting the other tenant's interest").  In light of these standards, we do not think that co-ownership is necessarily dependent on possessing legal title, and we agree with the Tax Court's conclusion that, as a co-owner of the stock, Birnie could dispose of her interest as she saw fit.

Oklahoma law regarding stock ownership also supports our conclusion that Birnie possessed a sufficient ownership in the Hondo stock for her to transfer it.[3] Under Oklahoma law, the fact that a person does not possess legal title to stock does not prevent the person from owning it.  The Oklahoma Supreme Court has stated:

> [I]t is quite possible, and often happens, for reasons of convenience
> or otherwise, that stock held in the name of one person really belongs

---

[3]Petitioner urges this court not to address the Commissioner's argument that Elizabeth was the nominee and Birnie was the beneficial owner of the Hondo stock because it is raised for the first time on appeal.  Regardless of whether our review of this argument is so barred, we do not address this specific theory of ownership because Oklahoma law regarding joint ownership and the general standards governing stock ownership adequately support the Tax Court's decision.

-17-

> to another. In such a case the certificate, though prima facie
> evidence of ownership in the person to whom it has been issued,
> possesses no such magic or sacredness as to prevent an inquiry into
> the facts.

Frazier, 63 P.2d at 14; accord Young v. Young, 393 S.E.2d 398, 400-01 (Va. 1990) (indicating that, although legal title as reflected in corporate records is prima facie evidence of ownership, true ownership must be determined by reference to the facts). In Frazier, plaintiffs' parents purchased stock in the names of their children but retained absolute dominion and control over the stock and its proceeds. See Frazier, 63 P.2d at 15. Because the parents retained such control, the Oklahoma Supreme Court concluded that the parents had not completed an *inter vivos* gift of the stock to their children despite the fact that the stock was registered in the children's names. See id. As a result, even though the parents never had legal title to the stock, the stock was deemed to have been at all times owned by the parents. See id.; see also Davis, 353 P.2d at 488 (holding that father never completed gift of stock despite transferring title into his children's names where he retained full dominion and control over the disposition and proceeds of the stock).

Just as legal title was not determinative of ownership in Frazier and Davis, in this case the fact that Elizabeth held legal title to the Hondo stock does not mean that she was the sole beneficial owner of the stock. Along with the sisters'

-18-

oral agreement to jointly own their assets and their subsequent commingling of all of their assets and earnings, Birnie's exercise of dominion and control over the stock supports the conclusion that she owned the stock. For example, Birnie contributed to the purchase of the stock. Birnie also purported to dispose of her interest in the Hondo stock in her last will and testament. In addition, although dividends may have been paid in Elizabeth's name, Birnie reported half of the earnings of the Hondo stock on her income tax returns. Further, on subsequent audits of Birnie's and Elizabeth's tax returns, the IRS accepted this arrangement.[4] Finally, Birnie's attempt to transfer her half of the Hondo stock to her niece and two nephews is consistent with her exercise of dominion and control over the stock.

In light of these considerations, we conclude that, in the third quarter of 1980, Birnie had a sufficient ownership interest in the Hondo stock to effect *inter vivos* gifts of the stock to her niece and two nephews.

B.

---

[4]As noted above, see supra Part I, the IRS contested the reporting of only one-half of the sisters' joint assets in Elizabeth's probate tax return. However, as part of the settlement with Elizabeth's estate, the IRS ultimately conceded that Birnie and Elizabeth jointly owned their assets.

Petitioner also argues that, because Birnie did not satisfy the delivery element of an *inter vivos* gift, she did not complete the gifts to Ms. Vestal, Mr. Davenport, and Mr. Botefuhr during the alleged calendar period. Specifically, Petitioner claims that Birnie did not deliver the gifts because she neither gave the Hondo stock certificates to her niece and two nephews nor transferred title to the stock into their names during the third quarter of 1980.

Although Oklahoma law clearly includes delivery as an element of *inter vivos* gifts, it also indicates that constructive or symbolic delivery—as opposed to actual, physical delivery of the subject matter of the gift—may satisfy the delivery requirement. See, e.g., Flesher v. Flesher, 258 P.2d 899, 905 (Okla. 1953) ("'Two essential requisites of a valid gift are the intent to give and the delivery of the things given, either manually *or symbolically*.'" (citation omitted) (emphasis added)); Fouts v. Nance, 155 P. 610, 613-14 (Okla. 1916) (stating that delivery may be actual or constructive); cf. Kilgore v. Parrott, 168 P.2d 886, 889 (Okla. 1946) (stating that delivery of a deed of conveyance "does not require a particular manual passage of the instrument from one to another but rather . . . anything which clearly manifests the intention of the grantor that the deed shall presently become operative and effectual"); Garrison v. Spencer, 160 P. 493, 494 (Okla. 1916) (holding that gift by deed conveying personal property was valid and that "manual delivery of the personal property described in the deed was

-20-

unnecessary"). Moreover, the cases suggest that symbolic or constructive delivery is especially appropriate when the subject of the gift is "in the nature of a chose in action" and therefore incapable of actual delivery. Green v. Comer, 141 P.2d 258, 262 (Okla. 1943) (stating that delivery element is met when donor does "an act . . . sufficient to constitute a symbolic delivery of the interest which being in the nature of a chose in action . . . is incapable of manual delivery"); see also Stinchcomb, 674 P.2d at 30 (noting that when "gift is chose in action[,] . . . delivery must be of a variety of which it is most capable"); Garrison, 160 P. at 494 (stating that "a gift of . . . choses in action, by deed, is complete and valid as an executed gift by the deed alone and without an actual delivery of the . . . security itself" (citation omitted)). Because the alleged gifts were gifts of stock, and because stock qualifies as intangible property and therefore is "in the nature of a chose in action," see Globe Life & Accident Ins. Co. v. Oklahoma Tax Comm'n, 913 P.2d 1322, 1326 (Okla. 1996) ("'Intangible personal property' encompasses property rights which–though represented by tangible objects (*e.g.*, stock certificates, bonds, and notes)–are essentially incorporeal in that they have limited intrinsic value and *ultimately* can only be claimed or enforced by a legal action."); see also id. at n.19 ("At common law intangible personal property falls under the rubric of a *chose in action*"), symbolic or constructive delivery was an appropriate means of fulfilling the delivery requirement.

-21-

Further, we think that Birnie's execution and delivery of the deed of gift and the sales agreements to Mr. Botefuhr, Ms. Vestal, and Mr. Davenport, respectively, constituted a constructive delivery of the gifts. The deed of gift and the sales agreements were legally binding and effectively transferred ownership of the stock to her niece and nephews. See Lacy v. Commissioner, 341 F.2d 54, 57 (10th Cir. 1965) (holding that purchaser obtained beneficial ownership and control of stock on date on which he entered into written agreement to purchase the stock). This constructive delivery, which occurred within the taxable period, was therefore sufficient to satisfy the delivery element.

Because Birnie satisfied the delivery requirement by executing the deed of gift and the sales agreements, her failure to deliver the Hondo stock certificates did not invalidate her gift. At first blush, federal tax regulations seem to suggest that stock certificates must be given to the donee to meet the delivery element of an *inter vivos* gift. The regulation states that "[i]f a donor delivers a properly indorsed stock certificate to the donee . . . , the gift is completed . . . on the date of delivery." See 26 C.F.R. § 25.2511-2(h). However, we do not think this provision means that a gift of stock *can only be* completed on the date of delivery of the stock certificates. Nor do we think that the regulation prescribes the *only* manner in which a gift of stock may be delivered; it merely provides that if delivery is so accomplished, then the completion date is the date on which the

-22-

certificates are transferred. Under this reading, Birnie's failure to provide her niece and nephews with the stock certificates during the third quarter of 1980 did not prevent her from delivering the gifts in a different manner, e.g., by executing and recording a deed of gift and entering into binding sales agreements.

We also do not think that Birnie's failure to transfer title to the Hondo stock into the names of Ms. Vestal, Mr. Davenport, and Mr. Botefuhr prevented her from completing the gifts. Some courts have indicated that transfer of present legal title is required to complete a gift for federal tax purposes. See, e.g., Goldstein v. Commissioner, 89 T.C. 535, 542 (1987) (noting that transfer of legal title is required for completion of *inter vivos* gift); Heyen, 945 F.2d at 362 (indicating that gift of stock is complete when stock is transferred into donee's name on corporation's books); Stjernholm v. Commissioner, 933 F.2d 1019, 1991 WL 88498, at **1 (10th Cir. 1991) (Table) (remarking that "there can be no gift under federal tax law unless the taxpayer irrevocably transfers present legal title"). However, not only is the requirement of a transfer of legal title inconsistent with the mandate that we examine the substance of a transaction rather than its form, see Gregory, 293 U.S. at 469-70; Heyen, 945 F.2d at 362, but also Goldstein, Heyen, and Stjernholm are distinguishable from this case. Neither Goldstein nor Heyen actually applies the requirement of a transfer of legal title; they simply cite the requirement in the course of a discussion of the general

-23-

requirements for completion of an *inter vivos* gift. The third case, <u>Stjernholm</u>, is an unpublished opinion applying a specific provision of Colorado law involving the transfer of title to a motor vehicle. <u>See</u> <u>Stjernholm</u>, 1991 WL 88498, at **1 (stating that "under Colorado law, failure to transfer legal title, particularly in the case of a motor vehicle, demonstrates a lack of donative intent"). Moreover, no Oklahoma case lists transfer of legal title as an element of an *inter vivos* gift. <u>See, e.g.</u>, <u>Sacred Heart Parish v. Giacomo (In re Estate of Carano)</u>, 868 P.2d 699, 703 n.5 (Okla. 1994) (listing elements of *inter vivos* gift as donative intent, complete delivery of the thing given, and acceptance by the donee); <u>Stinchcomb</u>, 674 P.2d at 30 (stating that "[t]o constitute a valid intervivos gift, there must be donative intent . . . ; actual delivery of the subject matter of the gift . . . ; and [the] donor [must] strip himself of all ownership and dominion over [the] subject-matter of [the] gift."); <u>Frazier</u>, 63 P.2d at 13 (listing ten elements of *inter vivos* gift).

Finally, the Tax Court has held that delivery of stock may be accomplished without transferring the title of the stock, so long as the donor definitively relinquishes dominion and control over the stock and no longer retains the power to revoke the gift. <u>See</u> <u>Richardson v. Commissioner</u>, 49 T.C.M. (CCH) 67, 1984 WL 15230 (1984). In <u>Richardson</u>, the beneficial owner of stock held under a living trust wrote a letter instructing the trust company to withdraw the stock from

-24-

the trust and deliver it to a bank.  On the same day, the owner also wrote a letter instructing the bank to distribute the stock to eight different charities.  Subsequently, before title to the stock was transferred into the donees' names, the bank tendered the stock on behalf of the donees to a company seeking to purchase the issuer of the stock.  Because the donor could no longer revoke the gifts, the court held that the delivery was complete on the date of tender, even though title had not yet been transferred on the corporate books.  Similarly in this case, Birnie's failure to transfer the stock into the donees' names did not prevent her from completing the gifts in the third quarter of 1980 because she constructively delivered the stock, and, as discussed below, by executing the deed of gift and the sales agreements, she placed the stock beyond her control so that she could no longer revoke the gifts.  In summary, we do not believe that, under either Oklahoma law or federal tax law, transfer of legal title is always essential to the delivery of a gift of stock.

Even if Birnie had not fulfilled the delivery requirement, she met the other, arguably more important, requirements of making *inter vivos* gifts—donative intent and a relinquishment of dominion and control over the subject matter of the gift.  Birnie's intent to convey the Hondo stock to the alleged donees is undisputed and clearly manifested in the sales agreements and the deed of gift.  Accordingly, a reasonable fact finder could conclude that, even though she had

-25-

not manually delivered the stock certificates or transferred the stock into the donees' names, she had completed the gifts. See Rolater, 542 P.2d at 219 (stating that "neither manual delivery of a certificate nor registering of a transfer on the corporate books is controlling [on the issue of delivery of corporate stock for purposes of an *inter vivos* gift] absent facts or circumstances demonstrating the first essential—donative intent of the . . . owner" and holding that transferring stock certificates into donees' names did not complete gift where record did not support a finding of donative intent); cf. Kilgore, 168 P.2d at 889 (stating that "the real test [for delivery of a deed of conveyance] is the intention of the grantor, which intention may be manifested by mere acts and words or both combined").

Birnie also surrendered control over her half of the Hondo stock during the third quarter of 1980. Under federal tax law, the critical determinant of the completion of a gift is whether the donor has "so parted with dominion and control as to leave in him no power to change [the gift's] disposition." 26 C.F.R. § 25.2511-2(b). Likewise, Oklahoma law requires the donor to surrender dominion and control over the subject matter of the gift. See Frazier, 63 P.2d at 13. Both the deed of gift and the sale agreements indicate that Birnie surrendered dominion and control over the Hondo stock. Birnie executed the deed of gift in favor of Mr. Botefuhr and simultaneously recorded it in the county recorder's office. The deed declares that "I, Birnie M. Davenport . . . have given, granted,

-26-

and conveyed, and by those present[] give, grant, and convey unto . . . Edward Botefuhr, . . . five hundred thirty seven (537) shares of Hondo Drilling Company capital stock . . . . [t]o have and to hold the said property to him, . . . his heirs and assigns forever." Appellee's Supp. App. at 15. The sales agreements also show that Birnie divested herself of control over the Hondo stock she gave to Ms. Vestal and Mr. Davenport. For example, the agreements indicate that, as of the date of the agreement, Birnie directed Hondo in writing to begin paying all dividends on the stock to Ms. Vestal and Mr. Davenport, see Appellant's App. at 161, 171, and that "simultaneously[] with the execution of th[ese] agreement[s], [Birnie] delivered to the [donees] stock powers signed in blank." Id. at 162, 172. The sales agreements further provide that Birnie directed her attorney, Ms. Childs, "to perform any and all acts necessary and proper to" effectuate the transfer of the stock on the books of Hondo into the names of the donees. Id. at 163, 173. In addition, Birnie surrendered her voting rights in the stock to Ms. Vestal and Mr. Davenport, and, in recognition of the fact that new certificates might not immediately be delivered to the buyers, Birnie agreed "to an irrevocable proxy covering all such shares running in favor of the Buyer[s]." Id. By executing and recording a deed of gift and entering into binding sales agreements, Birnie placed the stock beyond her control. She could not revoke the transfers. Cf. Courtney v. First Nat'l Bank, Coalgate, 569 P.2d 458, 460 (Okla. 1977)

-27-

(holding that gift of two certificates of deposit was incomplete because decedent could have revoked the purported gift by changing the payee, cashing the certificates, or pledging them as collateral).

> A legally enforceable promise to give is subject to gift tax at the time the promise is made, not when the property is actually transferred. This principle is premised upon the notion that once the donor has relinquished legal control of the property, any factual control he might exert is in derogation of the donee's rights as legally vested under state law.

Autin, 109 F.3d at 235.

Not only do the deed of gift and the sales agreements demonstrate that Birnie surrendered her control over the Hondo stock but also, after executing the documents, she did not in fact exercise any control over the stock. The record shows that after July 1980 Birnie did not receive any Hondo stock dividends. Instead, the dividends were distributed from Elizabeth's estate directly to Ms. Vestal, Mr. Davenport, and Mr. Botefuhr. In addition, the November 1980 agreement entered into by Ms. Vestal, Mr. Davenport, and Mr. Botefuhr, in which Mr. Botefuhr agreed to file and pay any gift taxes due for the stock he received as a gift from Birnie, demonstrates that they believed a gift had occurred in the third quarter of 1980 and renders their argument that no gift occurred until 1984 disingenuous. The fact that Mr. Botefuhr redeemed his 537 shares of Hondo stock before February 14, 1983, the date on which the Oklahoma probate court

determined that Birnie and Elizabeth jointly owned the Hondo stock, further indicates that Birnie previously had surrendered her control. By relinquishing control over the Hondo stock during the third quarter of 1980, Birnie completed the *inter vivos* gifts to her niece and nephews.

## III.

We conclude that Birnie had a sufficient ownership interest in the Hondo stock such that she was competent to effect *inter vivos* transfers of the stock to Ms. Vestal, Mr. Davenport, and Mr. Botefuhr. We also hold that Birnie completed the gifts during the third quarter of 1980 because she constructively delivered the stock to her niece and two nephews, possessed an undisputed intent to give, and relinquished dominion and control over the subject matter of the gifts. Accordingly, the Tax Court's decision is **AFFIRMED**.