**UNITED STATES of America**

v.

**Cosmo S. GENIVIVA, Jr., Individually and as Executor for the Estate of Helen Geniviva; Brian Geniviva; Marilyn Geniviva**

**Brian Geniviva and Marilyn Geniviva, Appellants**

**No. 93–3254.**

United States Court of Appeals, Third Circuit.

Argued Dec. 7, 1993.

Decided Feb. 7, 1994.

George B. Stegenga, (argued), Stegenga & Geary, Washington, PA, for appellants.

Gary R. Allen, Bruce Ellisen, Scott P. Towers, (argued), U.S. Dept. of Justice, Tax Div., Washington, DC, Paul J. Brysh, Office of U.S. Atty., Pittsburgh, PA, for appellee.

Before BECKER, NYGAARD and WEIS, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Brian and Marilyn Geniviva appeal from an order of the district court granting summary judgment to the United States in its action to impose transferee liability against them for unpaid taxes due from the estate of Helen Geniviva. The district court held that the suit was not time-barred, even though no assessment was filed under 26 U.S.C. § 6901 and the time for doing so had passed. Because a section 6901 assessment is not a prerequisite to an action against transferees under 26 U.S.C. § 6324(a)(2) and this case was filed within the statutory period for claims under the latter section, we will affirm.

### I.

Helen Geniviva died in 1981, leaving an estate valued at approximately $446,000 in equal shares to her three children, Cosmo, Brian and Marilyn. Cosmo Geniviva was appointed as the executor. Unbeknownst to Brian and Marilyn, who had already received their distributions from the estate and were apparently under the impression that the matter had been properly closed, Cosmo failed to file an estate tax return until January 1985. The IRS audited the return a few months later and determined that a substantial additional tax was due. In June or July of 1987, all three children met in the office of Nicholas A. Frisk, Jr., the attorney for the estate, to discuss the matter. Apparently, this was when Brian and Marilyn first learned of the estate's tax problems. As a result of that meeting, the children agreed to sell some real estate to raise money,[1] and the estate agreed to the immediate assessment of approximately $275,000 in back taxes, interest and fraud penalties.

Despite this purported agreement, only a small fraction of the assessed amount was ever paid by the estate. In March 1989, Brian and Marilyn sued Cosmo and Attorney Frisk, alleging fraudulent and negligent mismanagement of the estate. Plaintiffs alleged that the defendants had dissipated the estate's assets by charging excessive fees and making poor investments in the stock market. No decision has yet been rendered in that case. Moreover, counsel informed us at oral argument that Cosmo has filed a petition in bankruptcy and Attorney Frisk appears to lack either malpractice insurance or substantial assets. Meanwhile, the estate's liability continued to grow; by February 1993, it had risen to a staggering $420,833.

In April 1992, the Government filed this suit against all three Geniviva children, seeking to impose transferee liability against them pursuant to 26 U.S.C. § 6324(a)(2). This section provides that if estate taxes are not paid when due, the beneficiaries are liable up to the amount received from the estate. Because of the penalties and interest that had accrued over the years, the Government sought to hold each child responsible for the full $110,000 he or she received. Cosmo settled with the Government, while Brian and Marilyn continued to litigate.

Both the Genivivas and the United States moved for summary judgment. Brian and Marilyn admitted liability as transferees, but asserted that the suit was time-barred. They acknowledged that an action to impose transferee liability is subject to a ten-year limitations period, but argued that the Government was first required to file assessments against them individually under 26 U.S.C. § 6901. Because the limitations period for making such an assessment had run, Brian and Marilyn contended that the entire

---

1. This sale did not take place until May 1991.

case was untimely. The district court, however, adopted the Report and Recommendation of the United States Magistrate Judge and granted summary judgment in favor of the United States. This appeal followed. The district court had jurisdiction under 28 U.S.C. §§ 1340, 1345 and 26 U.S.C. §§ 7402(a), 7404. We have appellate jurisdiction under 28 U.S.C. § 1291. Our scope of review over this issue of law is plenary.

## II.

26 U.S.C. § 6324(a)(2) imposes liability on the transferees of a decedent's estate when the estate itself fails to pay its federal taxes. Essentially, it affords the Government a separate remedy against the beneficiaries of an estate when the estate divests itself of the assets necessary to satisfy its tax obligations. 26 U.S.C. § 6901, on the other hand, permits the Government to assess tax liability against a transferee in the same manner as it assesses liability against the estate itself. Section 6324, the older of the two sections, was enacted as part of the Revenue Act of 1916.

Before 1926, when section 6901 was enacted, the only means by which the Government could impose liability against a transferee was by a bill in equity or an action at law brought under the precursor to section 6324. *Phillips v. Commissioner*, 283 U.S. 589, 592, 51 S.Ct. 608, 610, 75 L.Ed. 1289 (1931). Section 6901 did not eliminate or limit such an action; rather, it provided an *additional* means by which the Government could enforce the collection of taxes. *Leighton v. United States*, 289 U.S. 506, 507–08, 53 S.Ct. 719, 720, 77 L.Ed. 1350 (1933). Thus, in *Leighton*, the Supreme Court held that a failure by the Government to personally assess the shareholders of a defunct corporation did not bar an action to impose transferee liability against them. *Id.* at 509, 53 S.Ct. at 720–21. *Leighton* has never been over-

ruled, either by the Court or by statute, and it is binding upon us.[2]

Appellants attempt to distinguish *Leighton* because it was bought in equity, while this is an action at law. One district court accepted that rationale, but was later reversed on appeal. *United States v. Russell*, 327 F.Supp. 632, 633–34 (D.Kan.1971), *rev'd*, 461 F.2d 605, 608 (10th Cir.) *cert. denied*, 409 U.S. 1012, 93 S.Ct. 438, 34 L.Ed.2d 306 (1972). The Tenth Circuit Court of Appeals, however, applied *Leighton* and held that a section 6901 assessment was not a prerequisite to an action under section 6324, but that the two sections were merely "cumulative and alternative—not exclusive or mandatory."[3] It did not deem the distinction between law and equity to be significant, and neither do we. Law and equity have long since merged, and there is no reason why the *Leighton* holding should not apply at law.[4]

The only case that supports appellants' position is *United States v. Schneider*, No. A1–89–197, 92–2 U.S.T.C. ¶ 60,119, 1992 WL 472024 (D.N.D. June 8, 1992), which refused to follow the appellate opinion in *Russell*, choosing instead to follow the district court's reversed opinion. We find the *Schneider* holding and rationale unpersuasive. The *Schneider* court's predominant reason for not following the Tenth Circuit in *Russell* was because it thought that

> it ignore[d] the mandatory language contained in section 6901 that the liabilities of transferees "shall" be assessed, and the fact that section 6901(h) specifically includes in its definition of transferee "any person who, under section 6324(a)(2), is personally liable for any part of such tax."

*Id.* Reading the two statutes together, the *Schneider* court concluded that a section

---

2. We have examined both the current and original versions of these statutes and find no differences in language that would undermine the holding in *Leighton*.

3. *Accord United States v. DeGroft*, 539 F.Supp. 42 (D.Md.1981); *United States v. Warner*, No. 83 CIV 3717 (LBS), 85–2 U.S.T.C. ¶ 13,641, 56 A.F.T.R.2d 85–6583, 1985 WL 2575 (S.D.N.Y. Sept. 18, 1985).

4. Appellants argue that "[*Leighton*] was a suit in equity and appellants feel that equitable principles should apply in the instant suit." To the extent that equitable principles did not bar the Government's suit in *Leighton*, however, such principles would seem even less applicable in this legal action.

6901 assessment was a mandatory procedure. We disagree.

Section 6901(a) says only that assessments against transferees must be handled in the same way as assessments against those liable for the tax in the first instance. Section 6901(h) defines a "transferee" as including, *inter alia,* anyone within the reach of transferee liability under section 6324(a)(2). We do not conclude from these two sections, read individually or together, that Congress meant to make an assessment under section 6901 a prerequisite for an action against transferees under section 6324(a)(2). In any event, the word "shall" was present in the original version of section 6901, yet did not prevent the *Leighton* Court from reaching its holding. *See* 289 U.S. at 507 n. *, 53 S.Ct. at 720 n. * (setting forth then-section 280(a)).

### III.

Accordingly, we hold that an individual assessment under 26 U.S.C. § 6901 is not a prerequisite to an action to impose transferee liability under 26 U.S.C. § 6324(a)(2). In so holding, we express a certain sorrow that what seems inherently unfair is also quite in accordance with the law, and note a compassion for the equitable position of the appellants. They received their inheritance apparently believing that the affairs of their late mother's estate had been competently represented, both professionally and personally, and handled in accordance with the law. Years later they found out that the estate had been poorly advised and represented, and had an unresolved, serious tax problem. Now they find themselves defendants in a lawsuit for the collection of those taxes, and under circumstances amounting to a forfeiture of their entire inheritance.

We think that appellants make a powerful argument that where the transferees are completely innocent and do not know that estate taxes are unpaid, they should not be individually liable for payment so long after the estate has been distributed. Unfortunately, this argument has been addressed and decided against them by the Supreme Court. Thus, the argument may only be addressed to the Internal Revenue Service for administrative rulemaking or to Congress for legislative action. We will affirm the judgment of the district court.