**UNITED STATES of America, Plaintiff,**

v.

**Gordon E. DAVENPORT, Defendant.**

**No. CIV.A G–03–923.**

United States District Court, S.D. Texas, Galveston Division.

June 18, 2004.

Ralph F. Shilling, Jr., Dept of Justice, Dallas, TX, Martin M. Shoemaker, U S Dept of Justice, Washington, DC, for Plaintiff.

Gordon E. Davenport, Jr., Davenport Law Firm, Alvin, TX, James L. Kincaid, Crowe & Dunlevy, Tulsa, OK, for Defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

When Gordon E. Davenport and his cousins received large blocks of Hondo Drilling Company stock from their financially savvy aunt, they got more than they bargained for. Confusion regarding ownership of the stock, proper valuation of the shares, and one cousin's failure to comply with the terms of a family agreement regarding payment of gift taxes, have resulted in years of litigation and the prospect of staggering financial liability to the Federal Government. The United States of America ("the United States" or "the Government") filed this lawsuit to recover unpaid gift taxes arising out of the transfer of stock from Birnie Davenport, now deceased, to her nephews, Defendant Gordon E. Davenport ("Davenport" or "Defendant") and Charles E. Botefuhr ("Botefuhr"), and her niece Patricia L. Vestal ("Vestal"). Now before the Court come Defendant's Motion for Summary Judgment, which asserts that the Government's claims are barred by limitations, and the Government's Response and Cross Motion for Partial Summary Judgment, which seeks a determination that the Government's claims were timely asserted. For the reasons stated below, Defendant's Motion is hereby respectfully **GRANTED IN PART AND DENIED IN PART,** and the Government's Motion for Partial Summary Judgment is hereby **GRANTED IN PART AND DENIED IN PART.**

### I. Background and Facts

Birnie Davenport and her older sister, Elizabeth, lived together most of their adult lives. Title to their house was held in both of their names, and they shared equally in construction and maintenance costs. Neither woman ever married, and both had long and successful careers in the oil and gas industry. Elizabeth served as an assistant to senior corporate executives, and Birnie was a legal secretary. Over the years, the two sisters commingled their earnings into a joint account and purchased assets together. Pursuant to an oral agreement between the sisters, legal title to their shared assets was in Elizabeth's name; however, they considered all investments to be jointly owned. One of their better investments was the purchase of stock in Hondo Drilling Company, a small drilling company located in New Mexico and West Texas, and Union

Supply, a related supply company. The two sisters executed wills containing identical provisions. When the first sister died, her estate would go into a testamentary trust for the benefit of the surviving sister. Upon the death of the second sister, the testamentary trust and the survivor's estate would be divided in two ways. All Hondo Drilling and Union Supply stock was to be divided into three equal shares among Davenport, Botefuhr, and Vestal. The balance of the estate was to be divided among these three cousins and two other cousins, giving a one-fifth share to each. Elizabeth Davenport died on December 2, 1979. In early 1980, her will was admitted to probate. Davenport, Botefuhr, and Vestal were appointed co-executors.

In 1980, Birnie Davenport transferred her ownership interest in 1,610 shares of stock in Hondo Drilling Co., Inc. to Defendant, Botefuhr, and Vestal. Birnie Davenport divided the stock roughly equally among the cousins, but she effected the transfers in two ways. With Davenport and Vestal, Birnie Davenport entered into sales agreements, selling 536 shares of Hondo stock to Vestal and 537 shares to Davenport.[1] The sales agreements valued the stock at $804 per share, which was the redemption price set by the directors of Hondo Drilling for the fiscal year 1980. As consideration for the stock, Davenport and Vestal each paid Birnie Davenport $1,000, and they executed promissory notes agreeing to pay Birnie Davenport $449,175.50 and $448,353.50, respectively, in twenty annual installments beginning in July of 1986. The sales agreements also called for annual interest on the unpaid principal.

In her 1980 Federal Income Tax Return, filed in 1981, Birnie Davenport reported these stock sales, using Form 6252 to detail the installment provisions, the subject-matter, and the fact that the sales were to related parties. *See* Form 6252, Computation of Installment Sale Income, Birnie Davenport 1980 Federal Income Tax Return, Government's Exh. 1. Less than two years after the parties entered into the sales agreements, and over four years before Davenport and Vestal were due to commence payment, Birnie Davenport forgave the balances on the notes. In March of 1983, Birnie Davenport filed a 1982 United States Gift Tax Return reporting the forgiveness of the notes, and she paid gift taxes on these gifts. *See* Government's Exh. 4, Stipulation of Facts, paras. 32–36.[2]

Unlike Davenport and Vestal, Botefuhr received his 537 shares of Hondo stock as an outright gift from Birnie Davenport in 1980. In late 1980, Botefuhr, Vestal, and Defendant signed an agreement ("the Family Agreement"), in which Botefuhr agreed to file any required gift tax returns for Birnie Davenport and also to pay any gift taxes resulting from his share of the Hondo stock.

In November 1982, the Internal Revenue Service ("IRS") sent a deficiency notice to the Estate of Elizabeth Davenport. The IRS had determined that all of the sisters' 3220 shares of Hondo stock belonged to Elizabeth Davenport's estate. In 1983, the Estate of Elizabeth Davenport

---

1. This transaction also included 75 shares of Union Supply Company stock. *See* 1980 Income Tax Return, Form 6252, Defendant's Exh. 1. Because the Hondo Drilling Company stock accounted for most of the transaction's value, the Court will hereinafter refer only to the Hondo Drilling stock.

2. Defendant does not admit that this document, which was a part of the proceedings in the Tax Court, should bind the Parties in this case, particularly as it relates to valuation of the Hondo Drilling stock. The Parties agree, however, that Birnie Davenport forgave the notes and paid gift taxes in 1982.

petitioned the United States Tax Court to challenge this determination. The parties settled this litigation in May 1984, agreeing that half of the Hondo stock was owned by Elizabeth Davenport and that half was owned by Birnie Davenport.

Birnie Davenport died in February 1991. Defendant, Vestal, and Botefuhr were appointed personal representatives of Birnie Davenport's Estate ("the Estate"). At the time of her death, no gift tax return had been filed reflecting the 1980 gift of Hondo stock to Botefuhr. On November 7, 1991, the Estate filed a gift tax return for 1980 reporting the transfer of Hondo stock from Birnie Davenport to Botefuhr. The Estate valued the Hondo stock at $804 per share, resulting in a total tax liability of $95,322, which the Estate paid. After examining the return, the IRS determined that the Estate had understated the value of the gift to Botefuhr. The IRS also determined that Birnie Davenport had sold shares of Hondo stock to Defendant and Vestal in 1980 at a discounted rate, resulting in additional taxable gifts to them. On September 20, 1994, the IRS issued a notice of deficiency to the Estate, asserting a gift tax deficiency of $1,422,154, as well as an addition to tax of $355,538.50 for failure to file a timely gift tax return. *See Estate of Davenport v. Commissioner*, 184 F.3d 1176, 1181 (10th Cir.1999).

The Estate petitioned the Tax Court for a redetermination of the deficiency. On November 7, 1997, the Tax Court determined that there was a federal gift tax deficiency of $822,653 due from the Estate for the calendar year 1980 as well as an addition to tax of $205,663 for failure to file a timely gift tax return. *See id.* The Tenth Circuit affirmed the Tax Court's Decision on July 13, 1999, concluding that Birnie Davenport made taxable gifts to Defendant, Vestal, and Botefuhr during the third quarter of 1980. *See id.* at 1188. On March 2, 1998, the IRS made an as-

sessment against the Estate for the deficiency, together with penalties and interest, and sent a notice and demand for payment to the Estate. The Estate did not pay the tax.

On February 2, 2000, the Government filed its complaint in this case in the United States District Court for the Northern District of Oklahoma. In the complaint, the Government sought (1) to reduce to judgment the liability of the Estate for the amounts due on the gift tax assessment; (2) to reduce to judgment the personal liability for unpaid gift taxes imposed upon Defendant, Vestal, and Botefuhr by 26 U.S.C. § 6324(b); and (3) judgments against the individual defendants, under 31 U.S.C. § 3713, as representatives of the Estate who had depleted its assets without satisfying the outstanding gift tax liability. The District Court asserted personal jurisdiction over Davenport and Botefuhr, both Texas residents, because they served as personal representatives of the Estate. After both Parties filed motions for summary judgment, the defendants conceded the issue of the Estate's liability, and the Government conceded the issue of the defendants' liability as representatives of the Estate. The District Court held that sections 6501 and 6502 of the Internal Revenue Code supplied the limitations period for personal liability claims against transferees under § 6324(b); therefore, the Government's claim was timely. *See United States v. Estate of Davenport*, 159 F.Supp.2d 1330 (N.D.Okla.2001) (citing *United States v. DeGroft*, 539 F.Supp. 42, 44 (D.Md.1981)). The Tenth Circuit reversed the District Court's ruling on personal jurisdiction over Botefuhr and Davenport but affirmed the statute of limitations issue, holding that the limitations period established by § 6502(a) governs individual liability claims under § 6324(b) and that

the Government's claim was timely against Vestal. *See United States v. Botefuhr,* 309 F.3d 1263 (10th Cir.2002). The Tenth Circuit remanded for determination of the value of the Hondo stock on the date of the gift.

On remand, the District Court transferred the Government's action against Defendant Gordon E. Davenport to this Court. On March 5, 2004, Defendant filed his Motion for Summary Judgment, arguing that the Government's claims are untimely. On April 8, 2004, the United States filed its Opposition and Cross Motion for Partial Summary Judgment, seeking a determination that its assessment and collection actions were timely commenced against Defendant.

## II. Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; rather, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, 2513.

## III. Analysis

The Government seeks to collect the Estate's unpaid gift taxes from Defendant through the transferee liability provision of 26 U.S.C. § 6324(b). Under the Internal Revenue Code, a transfer of property by gift in any calendar year is subject to tax for that calendar year. *See* 26 U.S.C. § 2501(a). The donor of the gift must file a gift tax return and pay the gift tax on all taxable gifts made in that year. *Id.* § 2502(c); *id.* § 6019. If the donor dies before filing the return and paying the gift tax, the executor or administrator of the estate must file the return, and the estate must pay the tax. *See* 26 C.F.R. §§ 25.2502–2.6019–1(g). If the gift tax is not paid by the donor when due, "the donee of any gift shall be personally liable for such tax to the extent of the value of such gift." 26 U.S.C. § 6324(b). Section 6324(b) also provides that the unpaid tax "shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made." *Id.*

The IRS must assess the amount of any tax due within three years after the relevant return is filed. *See* 26 U.S.C. § 6501(a). The Government characterizes an "assessment" as essentially an internal bookkeeping procedure used to record the amount of a taxpayer's liability in the IRS records. *See* 26 U.S.C. § 6203; *Laing v. United States,* 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479, 46 L.Ed.2d 416 (1976). Following a timely assessment, the IRS may collect the tax due by levy or by a court

proceeding, but the levy or proceeding must begin within 10 years of the assessment. *See id.* § 6502(a).

The Government asserts that it made a timely assessment of tax liability against the Estate pursuant to § 6502(a); therefore, its claim against Defendant is timely because it was brought within ten years of the assessment. *See id.* Defendant argues that the Government's claim under § 6324(b) is untimely for three reasons. First, Defendant asserts that personal liability under § 6324(b) expires with the ten-year lien. Second, Defendant argues that the Government's failure to make an assessment against Defendant as transferee bars the claim under § 6324(b). Finally, Defendant argues that even under the limitations period suggested by the Government, its claims are untimely insofar as they are based on the 1980 installment sale because the Government had complete notice of that transaction in 1981.

Because the Court agrees with the Tenth Circuit and the Northern District of Oklahoma that the general limitations in sections 6501 and 6502 apply to personal liability claims under 6324(b), the Court finds that the Government's claims are timely to the extent that they arise out of unpaid gift taxes assessed within three years of the Estate's filing of its 1980 Gift Tax Return. The Tax Court ruled that the deficiency notice, issued on September 20, 1994, served as a timely assessment of the tax owing from the Gift Tax Return filed in 1991. There remains a dispute, however, regarding the scope of this assessment, timely though it may have been. Because the Court finds that the Government had notice of the 1980 installment sale to Defendant in 1981, the Government's 1994 assessment was not timely with respect to gift taxes arising out of that transaction. Because the Government failed to timely assess the taxes owing on the imputed gift element of the

installment sale, the claim for the taxes arising out of the imputed gift to Gordon Davenport is barred by limitations.

*A. The Limitations Period in § 6502(a) Applies to Claims Brought Pursuant to § 6324(b)*

Defendant maintains that personal liability under § 6324(b) is subject to the same ten-year limit as the special lien. The Government has conceded that the period for enforcing the special lien has lapsed. *See Botefuhr,* 309 F.3d at 1277 (citing *Estate of Birnie Davenport,* 159 F.Supp.2d at 1333). As the Tenth Circuit noted, however, § 6324(b) distinguishes between the special lien and the transferee's personal liability. *See id.* The latter provision contains no statute of limitations. Because the statute clearly makes personal liability under § 6324(b) independent from the ten-year lien, the Court agrees with the Tenth Circuit that the special lien does not establish a limitation period for the personal liability of the transferee. *See id.*

■ Nor does the Government's failure to make an assessment against Defendant as transferee prevent it from pursuing a personal liability claim under § 6324(b). Defendant's argument for a transferee assessment is based on § 6901, which requires that the amount of the liability of a transferee shall be "assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred." 26 U.S.C. § 6901. Numerous courts have held, however, that a transferee assessment under § 6901 is not a prerequisite to a personal liability suit under 26 U.S.C. § 6324(a)(2), which imposes liability on the transferees of a decedent's estate when the estate fails to pay its taxes. *See United States v. Geniviva,* 16 F.3d 522, 524 (3d Cir.1994) (explaining that § 6324 predates § 6901, which, rather than eliminating the remedy

provided by § 6324, merely provides an additional method of tax collection); *United States v. Russell*, 461 F.2d 605 (10th Cir.1972) (holding that "the collection procedures of § 6901 are cumulative and alternative—not exclusive or mandatory"); *United States v. Estate of Davenport*, 159 F.Supp.2d 1330, 1335 (N.D.Okla.2001), *rev'd in part on other grounds, United States v. Botefuhr*, 309 F.3d 1263 (10th Cir.2002). While *Geniviva* and *Russell* arose out of the Government's attempt to collect delinquent estate taxes from transferees under § 6324(a), it is well-established that the gift tax and estate tax provisions of § 6324 "are in *pari materia* and must be construed together." *Estate of Sanford v. Commissioner*, 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20 (1939), *cited in Botefuhr*, 309 F.3d at 1276 n. 9. Based on this authority, the Court agrees that a personal liability claim under § 6324(b) may be brought without a prior assessment against the transferee under § 6901.

■ The question remains what limitations period applies to the Government's claim. In *Botefuhr*, the Tenth Circuit noted that although few courts have considered this issue, those that have done so have looked to the general limitations provisions in sections 6501 and 6502. *See Botefuhr*, 309 F.3d at 1277. This reliance on sections 6501 and 6502 is based on the theory that "so long as the government could bring a timely action against the donor, its action against the donee will be considered timely." *Id.; see also United States v. Wright*, 57 F.3d 561, 564 (7th Cir.1995) ("[S]uits against persons derivatively liable for taxes are timely, or not, according to the rules for timeliness of suits against taxpayers."). The Court agrees with the Tenth Circuit's interpretation, which harmonizes § 6324(b)'s personal liability provision with other relevant code provisions while preserving the distinction between primary donor liability and derivative personal liability under

6324(b). Once the Government has timely assessed the gift tax against the donor, the same ten-year limitations period applies to the donor and donee under § 6502(a).

Defendant argues in the alternative that even if § 6501 requires an assessment against the transferor only, § 6502 cannot supply the limitations provision for a § 6324(b) claim because it is triggered by an assessment. In Defendant's view, this is inconsistent with the self-actuating nature of the transferee's personal liability under § 6324(b). The Court disagrees. The mere fact that § 6501 requires an assessment against the transferor does not affect the "no-assessment" aspect of § 6324(b). Because the latter provision concerns transferees only, its purpose would only be contravened by a requirement that the IRS make an assessment against the transferee. The assessment required by § 6501 secures the Government's ability to collect the gift tax liability from the transferor. Its only effect upon the transferee's derivative, non-tax liability under § 6324(b) is to establish a time limit for enforcement.

To summarize, claims against a transferee under § 6324(b) must be brought within the period prescribed by sections 6501 and 6502. Section 6501 requires that the Government assess any tax imposed within three years of the date the return was filed. 26 U.S.C. § 6501(a). Section 6502 provides that once a timely assessment has been made, the tax may be collected within ten years after the assessment of the tax. 26 U.S.C. § 6502(a)(1). The determination that § 6324(b) is governed by the three-year assessment provision of § 6501 and the ten-year limitations period of § 6502 settles the question whether the Government timely filed its claims arising out of the 1980 gift of Hondo Drilling stock to Botefuhr. The Government issued a notice of deficiency, which was determined

by the Tax Court to be the equivalent of an assessment, within three years of the Estate's filing of the 1980 Gift Tax Return. The Tenth Circuit's decision in *Botefuhr* makes clear that § 6324 imposes liability on a donee "for *any* gift tax incurred by the donor during the year in which the donee received a gift, *regardless of whether* that individual donee's gift actually contributed to the donor's gift tax deficiency." *Botefuhr*, 309 F.3d at 1276 (citing *Want v. Commissioner*, 280 F.2d 777, 781 (2d Cir. 1960) (Friendly, J.); *La Fortune v. Commissioner*, 263 F.2d 186, 194 (10th Cir. 1958)). Defendant may therefore be liable for the unpaid gift taxes resulting from Birnie Davenport's gifts to his cousins, even if the Government is barred from collecting taxes on his own gift.

*B. The IRS Had Sufficient Notice in 1981 to Trigger the Statute of Limitations on Claims Arising out of the Installment Sale*

■ Defendant argues that the 1980 income tax return filed by Birnie Davenport in 1981 provided the Government with sufficient notice of the imputed gift of Hondo Drilling stock to trigger the statute of limitations on any claim arising out of that gift.[3] The Government maintains that it did not receive sufficient notice of the imputed gift in the 1980 installment sale transaction between Birnie and Gordon Davenport until the Estate filed its 1980 Gift Tax Return in 1991. Because Birnie Davenport's 1981 Income Tax Return pro-

vided complete notice of the installment sale, and because the 1980 Income Tax Return that the Estate filed in 1980 provided no additional notice of the transaction, the Court concludes that the Government had sufficient notice of the gift to Defendant in 1981. Because the Government failed to assess the tax arising out of this gift within three years of the filing of the Income Tax Return as required by 26 U.S.C. § 6501, its claim against Defendant pursuant to § 6324(b) is not timely as it relates to the installment sale.

The Tenth Circuit recognized in *Botefuhr* that "once [a] taxpayer has evinced an honest and genuine effort to satisfy the law by filing such a return, the § 6501(a) period begins to run." 309 F.3d at 1279. The issue of notice turns on the question whether Birnie Davenport's 1980 Income Tax Return, which specifically listed the sales agreements and designated them as related-party transactions, constitutes an honest and genuine effort to satisfy the law. That the Parties talk past each other on this point may perhaps be explained by the anomalous nature, at least for purposes of reporting, of an "imputed gift." Obviously, the Government takes the position that Birnie Davenport made a taxable gift to Defendant in late 1980. Although Defendant no doubt disagrees with this conclusion, the Tax Court's decision that such a gift was made resolves the question for purposes of this litigation. But this

---

**3.** Patricia Vestal made a similar argument before the Tenth Circuit, but the Circuit deemed the argument waived for failure to raise it in the district court. *See Botefuhr*, 309 F.3d at 1280 n. 14 (declining to consider the argument because it was raised for the first time in the reply brief on appeal). Davenport has properly and timely raised the argument in this proceeding.

Vestal also argued that Birnie Davenport's gift tax return of March 31, 1983, which reflected the forgiveness of the promissory notes executed by Vestal and Davenport, provided

sufficient notice to start the statute of limitations on any claims to collect taxes arising out of the installment sale transactions. *See id.* at 1279. The Tenth Circuit declined to consider this argument, noting that Vestal failed to raise it in the district court. The Court also noted that the 1980 installment sale and the forgiveness of the promissory note in 1982 constituted separate gifts. *See id.* at 1280 n. 12. Defendant does not base his notice argument upon Birnie Davenport's 1983 gift tax return.

fundamental dispute highlights a crucial fact: It is inherent in the concept of an imputed gift that the parties to the original transaction do not share the Government's opinion that the transaction involves a gift. Given this basic assumption, to expect the would-be taxpayer to file a gift tax return makes little sense. Considering that the taxpayer does not perceive that he or she has made a gift at all, the most that might reasonably be expected is that she would report the sale proceeds as income on her income tax return.[4]

The record indicates that these assumptions are borne out in the real world. In her 1980 Income Tax Return, Birnie Davenport filled out a special form, Form 6252, to report her income from the installment sale to Defendant. *See* Form 6252, Government's Exh. 1. Item D in Form 6252 asks whether the property at issue was sold to a related party; Birnie Davenport marked "Yes." *See id.* "The presumption is that a transfer between closely related parties is a gift." *Estate of Reynolds v. Comm'r*, 55 T.C. 172, 201, 1970 WL 2324 (1970); *see also Wheeler v. United States*, 116 F.3d 749, 763 (5th Cir.1997). It seems logical to assume that this presumption rests on the understanding that a transaction between related parties that does not bear the normal features of a gift—that is, the kind of transaction in which the IRS would likely find an imputed gift element—would not likely be reported by the parties as a gift.

The Government states that, after examining the 1980 Gift Tax Return filed by the Estate, it determined that Birnie Davenport had also sold shares of the Hondo stock to Vestal and Davenport at a dis-

counted rate in 1980, resulting in taxable gifts. United States' Opposition and Cross Motion for Partial Summary Judgment at 7. If the government had received no prior notice that the 1980 installment sale took place, and if the Estate's 1980 Income Tax Return had in fact drawn the Government's attention to that transaction, the Court would agree that proper notice did not occur until 1991. But the Court sees no evidence that the 1980 Gift Tax Return, filed in 1991, provided any notice of the decedent's transactions with Defendant or Vestal. Indeed, the prior rounds of this controversy indicate that the 1980 Gift Tax Return provided the Government with information about the gift to Botefuhr only. *See Estate of Davenport*, 184 F.3d at 1180 (finding that the Estate "prepared a gift tax return reflecting a gift of 537 shares of Hondo stock in the third quarter of 1980 from Birnie to Mr. Botefuhr"). While it may have encouraged the Government to check Birnie Davenport's file for 1980, the Gift Tax Return provided no information whatsoever regarding Birnie Davenport's transaction with Defendant. The Government's determination that additional taxable gifts occurred in 1980 may have been made *after* it received the 1980 Gift Tax Return, but that determination could not have been made *because of* the gift tax return. The information simply wasn't there. The only document in the record that provides information about the imputed gift to Defendant is Form 6252 in Birnie Davenport's 1980 Income Tax Return. Thus, all of the information that the IRS needed—and all of the information it now relies upon—to collect the taxes on Birnie

---

**4.** The Internal Revenue Code does grant the Government unlimited time to collect taxes in cases involving false or fraudulent returns: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assess-

ment, at any time." 26 U.S.C. § 6501(c)(1). However, the Government does not argue that Birnie Davenport, the Estate, or Defendant made such an attempt, nor does the Court find evidence in the record to support such a finding.

Davenport's 1980 gift to Defendant, it had in 1981. Indeed, all the notice the Government *ever received* came to it through Birnie Davenport's 1980 Income Tax Return.[5]

The Government stresses that the limitations period does not begin until the actual filing of the gift tax return. Given the nature of imputed gifts, the Government's position would require the Court to hold that claims against a taxpayer or transferee for imputed gifts are not subject to any limitations period. At least in situations like the current one, where the taxpayer made a good faith effort to report the transaction in full on a timely filed tax return, including information that the parties were related, this simply cannot be the case.

Because Birnie Davenport made an honest effort in her 1980 Income Tax Return to report the transaction that gave rise to the Government's current claims against Defendant, and because the Government relies upon no other source for information regarding that transaction, the Court finds that the 1980 Income Tax Return constitutes a reasonable and honest effort to comply with the law. Moreover, because the Income Tax Return alone provided notice to the Government that Birnie Davenport should have paid gift taxes on the installment sale of Hondo Drilling stock to Defendant, the Court finds that the Government had adequate notice of Birnie

Davenport's gift to Defendant in 1981. Under the limitations framework discussed above, the Government was required to assess the tax on the gift to Defendant within three years after the 1980 Income Tax Return was filed. Because it failed to do so, no timely assessment was made, and its claim is barred to the extent that it seeks taxes arising out of the 1980 installment sale of Hondo Drilling stock from Birnie Davenport to Defendant. The Court recognizes the Supreme Court's longstanding admonition that "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Badaracco v. Commissioner*, 464 U.S. 386, 391, 104 S.Ct. 756, 761, 78 L.Ed.2d 549 (1984) (citing *E.I. Dupont De Nemours & Co. v. Davis*, 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924)). Indeed, the Court has historically gone to extraordinary lengths to assist the Government in its efforts to enforce the tax laws, even going so far, on several occasions, as to report the failure of certain personal injury claimants to pay income tax for years on end. Nonetheless, based on *this* record, which the Parties have had years to develop, the Court cannot conceive of a reasonable construction of the law that would permit the Government to pursue its claim for taxes arising out of the 1980 sale of Hondo Drilling stock to Defendant. On this ground only, Defendant's Motion for Summary Judgment is **GRANTED**,

---

5. The Government advances a number of arguments based on the theory that Birnie Davenport's 1980 gift to Defendant—the undervalued installment sale—was reflected in the 1980 Gift Tax Return filed on behalf of the Estate in 1991. For example, the Government asks, "If the executors of the Birnie Davenport Estate believed they had done all that was necessary in respect to the stock transfers prior to Birnie Davenport's death, why did they file the delinquent gift tax return in 1991?" Response at 16. There is no evidence in the record, however, of any nexus between Birnie Davenport's gift to Defendant and the Estate's 1980 Gift Tax Return. To the contrary, and as explained above, the record indicates that the Estate's gift tax return mentioned only the gift to Botefuhr. Defendant's action in filing this return as a representative of Birnie Davenport's Estate does not constitute an admission or acknowledgment of his own donee liability arising out of the 1980 installment sale, which was an entirely separate transaction. Any argument by the Government to this effect is based on a faulty premise that is not supported by the record.

and the Government's Motion for Partial Summary Judgment is hereby respectfully **DENIED**.

## IV. Conclusion

For the reasons stated above, the Court concludes that the United States' assessment and collection actions to recover unpaid gift taxes against Defendant Gordon Davenport are timely insofar as they seek to collect unpaid taxes on the gift of 537 shares of Hondo Drilling Co. stock from Birnie Davenport to Charles E. Botefuhr in 1980. Therefore, as to the claims arising out of the 1980 gift to Botefuhr, Defendant's Motion for Summary Judgment is hereby respectfully **DENIED**, and the United States' Cross Motion for Partial Summary Judgment is hereby **GRANTED**. However, because the United States failed to timely assess the taxes arising out of the installment sale of Hondo Drilling Company stock to Defendant Gordon Davenport, the Government's claim to collect such taxes is barred by limitations. Accordingly, as to the claims arising out of the taxes on Birnie Davenport's 1980 gift to Defendant Gordon E. Davenport, Defendant's Motion is hereby **GRANTED**, the Government's Motion is hereby respectfully **DENIED**, and such claim is hereby respectfully **DISMISSED WITH PREJUDICE**. A Final Judgment in this regard will be entered in due course. Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED.**